[Civ. No. 4223.   First Appellate District, Division Two.—May 19, 1922.]

## A. C. BASSI, Respondent, v. SPRINGFIELD FIRE & MARINE INSURANCE COMPANY, Appellant.

[1] FIRE INSURANCE—ATTACHMENT OF "IRON SAFE CLAUSE" TO DELIVERED POLICY—REFUSAL OF INSURED — FORBEARANCE OF CANCELLATION — INSUFFICIENT CONSIDERATION FOR MODIFICATION.—Where a policy of fire insurance covering a stock of merchandise did not contain an "iron safe clause" at the time of its execution and delivery, and thereafter a rider containing such clause was mailed to the insurer with a request that he attach the same to the policy, and such request was refused, the mere fact that the insurer after discovery of such refusal failed to exercise the privilege of cancellation of the policy secured to it therein was not a sufficient consideration for the inclusion of such clause, in the absence of a definite agreement on the part of the insurer not to cancel the policy.

[2] ID.—REFUSAL TO ACCEDE TO IRON SAFE CLAUSE—FAILURE TO NOTIFY INSURER — INVALIDITY OF CLAUSE — ABSENCE OF ESTOPPEL.—The holder of a fire insurance policy is not estopped from denying the validity of an "iron safe clause" which was not attached to the policy at the time that the policy was executed and delivered, because of the fact that he kept the policy and failed to notify the insurer that he would not accede to a rider containing such clause, which the insurer thereafter mailed to him with request to attach to the policy, where it was not shown that the insurer intended to serve notice of cancellation if the insured refused to be bound by such clause.

[3] ID.—STANDARD FORM OF POLICY—CHANGE—ATTACHMENT OF SEPARATE RIDERS.—The standard form of fire insurance policy required by the act of the legislature (Stats. 1909, p. 404) cannot be modified, changed, or added to except by attachment of separate riders before delivery of the policy to the insured, or afterward with his consent.

APPEAL from a judgment of the Superior Court of Imperial County. M. W. Conkling, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. W. Hindman for Appellant.

Louis Lamy and Frank C. Weller for Respondent.

LANGDON, P. J.—This is an appeal by the defendant from a judgment against it for fifteen thousand dollars upon two policies of fire insurance.

The facts as found by the court are: On November 28, 1920, and for more than four years prior thereto, the plaintiff was engaged in the business of selling and buying new and second-hand goods, wares, and merchandise, consisting of household goods, men's furnishings, etc., at the city of Calexico, county of Imperial, California. On March 6, 1920, the defendant issued and delivered to plaintiff a certain policy of fire insurance in the amount of twelve thousand five hundred dollars, covering said stock of merchandise. On May 7, 1920, defendant issued and delivered to plaintiff another policy covering the same property and in the amount of two thousand five hundred dollars. Plaintiff paid the respective premiums upon said policies as the policies were delivered to him. At the time of the issuance of said policies, and at the time of the fire which occurred later, the personal property covered by the said policies was contained in a certain brick building in the city of Calexico and said property was solely and exclusively owned by plaintiff and was of the value of more than twenty thousand dollars. On November 28, 1920, said stock of goods was destroyed by a fire which originated in a building two doors north of plaintiff's said place of business.

The trial court also found that said fire and loss occasioned thereby were not caused through any fault, negligence, or fraud on the part of plaintiff, and that said plaintiff had done no act or thing to invalidate or cancel said policies of insurance; that preliminary proofs of loss were furnished to defendant in due form and that on February 2, 1921, defendant notified plaintiff that it repudiated any liability on account of said insurance and refused to pay to plaintiff the amount of said policies.

The sole defense offered by defendant was that the plaintiff had not complied with what is termed the "iron safe clause," alleged to have been a part of said policies. Said

clause provides, in effect, that as a part of the considera-
tion for the policy, the assured covenants and agrees to
keep a set of books, showing a complete record of business
transacted, together with an inventory of stock taken within
twelve months prior to the date of any loss, and to keep
said books and inventory securely locked in a fire-proof
safe at night and at all times when the building mentioned
in the within policy is not actually open for business. Said
clause also provides that in case of loss, the assured agrees
to produce such books and inventory, and in the event of a
failure to produce the same, the policy is to be null and
void.

It may be admitted at the outset that the plaintiff did
not comply with the provisions of this clause. The testi-
mony shows that his inventory and books were customarily
kept in a safe which actually proved to be fire-proof. The
fire occurred early Sunday morning. On the Saturday
evening before the fire, plaintiff worked until very late in
the evening on his books and accounts because he desired to
collect as much money as possible so as to meet his out-
standing obligations. When he left his office some time
after 10 o'clock on Saturday night, he expected to return
on Sunday morning and complete the work on his accounts
and contracts. He, therefore, left the books on his roller-
top desk where he had been working, pulling down the top
of the desk to cover them, instead of placing them in the
safe as usual. The fire occurred very early the next morn-
ing and the books and accounts were destroyed. As to
whether or not the inventory which plaintiff testified he
had taken was sufficient is a question which need not con-
cern us here, because it must be conceded that in one im-
portant particular, at least, the plaintiff did not comply
with the conditions of said "iron safe clause," in that he
did not put his books and inventory into a fire-proof safe.
Under these facts, the record presents but one question,
i. e., whether or not said "iron safe clause" was a part of
either or both of the policies upon which recovery was had.

Upon this issue, the trial court found, with reference
to the twelve thousand five hundred dollar policy, that
said "iron safe clause" was not attached to said policy at
the time the same was executed by defendant and delivered
to plaintiff; that about a month or six weeks after the exe-

cution and delivery of said policy, defendant's agent called upon plaintiff at his place of business and attached said "iron safe clause" to said policy and that there was no new consideration passed between said parties and that there was no consideration whatever to support the modification or attempted modification of said policy, and that plaintiff did not at the time understand the same or agree thereto.

Defendant's agent admitted the facts as found by the court regarding the condition of the policy when it was delivered by him to plaintiff, and his subsequent attempt, weeks later, to add the "iron safe clause" rider to the policy. The only conflict in the testimony, with relation to the findings above, is as to whether or not plaintiff agreed to the attachment of the rider. On this point the plaintiff testified that at the time the policy was delivered to him he had had no conversation with defendant's agent concerning the attachment of any rider to the same; that some time later Mr. Grieves, defendant's agent, came to plaintiff's store and wanted to attach a clause to the policy, "and I handed him the policy and he attached the clause and I never looked at it." He also testified that Mr. Grieves told him he was attaching an iron safe clause, but he did not know what that meant. Mr. Grieves, testifying for the defendant, stated that after the policy had been delivered by him to plaintiff, the insurance company wrote a letter asking its agent to attach an "iron safe clause" to this policy; that Grieves, accordingly, wrote up such an endorsement for the policy and took it to plaintiff, some weeks after the policy had been delivered; that said Grieves told plaintiff that the company required him to "keep the books in the safe, and that class of business was not liked by insurance companies, and that was the only way they would carry insurance"; that plaintiff objected at the time and Grieves told him "that the company required it or they would not take care of the insurance," and thereupon plaintiff assented to it and Grieves attached said rider to the policy.

Although this testimony supports appellant's position that the plaintiff agreed to the attachment of the rider, nevertheless, the trial court was at liberty to accept the plaintiff's testimony where it was in conflict with that of

defendant's agent, and to find, as we have recited, regarding the matter of the attachment of said "iron safe clause" to said policy of insurance.

As to the second policy for two thousand five hundred dollars, the court has found that at the time of its execution and delivery to plaintiff the said "iron safe clause" was not a part thereof; that said clause was in fact never attached thereto; that several days after the delivery of said policy to plaintiff, defendant's agent forwarded by mail to plaintiff a rider containing said "iron safe clause" and requested that plaintiff attach the same to his policy; that plaintiff refused to comply with said request and never attached same to his policy; that there was no consideration whatever for said attempted modification of said policy.

The agent of defendant admitted that said clause was not attached to said policy when it was delivered to plaintiff; that, later, he forwarded by mail to plaintiff a rider containing said clause and requested plaintiff, in a letter sent therewith, to attach same to his said policy. It is true that defendant introduced into evidence an affidavit made by plaintiff after the loss occurred, in which plaintiff said that he had intended to attach said rider to said policy but had overlooked doing so. This affidavit was written by defendant's insurance adjuster, and plaintiff signed same upon the solicitation of said adjuster and Grieves, the agent of defendant. In relation thereto plaintiff testified that the adjuster had asked him to sign this affidavit in order to make the policies uniform and to facilitate the settlement of the loss, and assured him that the loss would be settled. Under such circumstances the statement therein is not conclusive upon the trial court, particularly in view of plaintiff's positive testimony at the trial that he never agreed to put this rider on his policy; that he read it and did not want to attach it and that he put it in a pigeonhole in his desk. The trial court has found in accordance with this testimony and has concluded that this rider never became a part of the contract between plaintiff and defendant.

[1] But whether or not said clauses were physically attached to said policies, or whether or not plaintiff consented to accept them, are matters which are not decisive of this case. A mere *nudum pactum* cannot be enforced

against plaintiff, and the really important question is whether or not there was any consideration to support this modification of the existing contracts between the parties. Appellant urges that the finding of the trial court that there was no consideration for the attachment by plaintiff of the riders in question to his policies is erroneous. It is urged that as the policies contained a clause permitting the defendant to cancel the same at any time by giving five days' written notice of cancellation to the insured, that the defendant's failure to exercise this privilege at the time it became aware that the "iron safe clause" had not been made a part of said policies was a consideration for the inclusion of said clauses in said policies. This argument overlooks the fact that defendant did not deprive itself of the privilege of cancellation secured to it by its policy, either in whole or in part or for any length of time. It entered into no agreement which precluded it from giving notice of cancellation to plaintiff at any time. It gave up no right or privilege. Its right to cancel the policies remained unimpaired, whether the clause in question was accepted by plaintiff or not. Under such circumstances, there was no mutuality to the alleged supplemental agreement between the parties. Mere forbearance to cancel the policy would not be a sufficient consideration without a definite agreement not to cancel. (*Shadburne* v. *Daly*, 76 Cal. 355, 359 [18 Pac. 403]; *Estate of Thompson*, 165 Cal. 296 [131 Pac. 1045].)

Policies of insurance are written contracts between the parties and are governed by the same rules which are applicable to contracts generally. The principle of law applicable here is stated in the case of *Main Street etc. Co.* v. *Los Angeles Traction Co.*, 129 Cal. 301 [61 Pac. 937], wherein it is said: "There can be no doubt of the principle contended for by the appellant that an agreement adding to the terms of an existing agreement between the same parties and by which new and onerous terms are imposed upon one of the parties without any compensating advantage, requires a consideration to support it; though this, of course, may consist either in a new consideration or in some favorable modification of the original contract."

[2]   Does, then, the principle of estoppel enter into the situation, as contended by appellant, and supply the want of

a consideration? It is argued that because plaintiff kept the policies and did not notify the defendant that he would not accede to the "iron safe clause," he is estopped to deny the validity of said clause.

But there is no evidence in the record that the defendant intended to serve upon plaintiff notice of cancellation of said policies in the event plaintiff did not consent to be bound by the "iron safe clause," and no evidence that plaintiff's failure to notify defendant that he refused to be bound by said clause caused defendant to forego sending such notice. The person claiming the benefit of an estoppel must show that he was misled by conduct of the other party. (*Washington* v. *Black,* 83 Cal. 290, 294 [23 Pac. 300].) The party claiming estoppel must have relied upon conduct of the other and have been induced by it to do something which he would not otherwise have done. (*McCormick* v. *Orient Ins. Co.,* 86 Cal. 260, 263 [24 Pac. 1003].) It is an essential element of estoppel by conduct that the party setting it up should have relied upon the conduct of the other and should have been induced thereby to do something which he otherwise would not have done. (*Barnhart* v. *Fulkerth,* 93 Cal. 497 [29 Pac. 50]; *First Nat. Bank* v. *Maxwell,* 123 Cal. 360 [69 Am. St. Rep. 64, 55 Pac. 980]; *Wheaton* v. *North British etc. Ins. Co.,* 76 Cal. 415, 432 [9 Am. St. Rep. 216, 18 Pac. 758].)

So far as this claim of appellant is concerned, the record is lacking in the essential proof that the failure of plaintiff to take some affirmative action in reference to the riders sent to him influence the conduct of the defendant to its injury.

[3] Claim is made by appellant that the policies themselves grant to the insurer the right to change their provisions at will; that such a privilege is a part of the original consideration for the issuance of the policies. This claim is based upon the following: The policies sued on are in the standard form required by the legislature of the state of California. (Act approved March 18, 1909; Stats. 1909, p. 404.) Each of said policies provides: "This policy is made and accepted subject to the foregoing stipulations and conditions and those hereinafter stated, which are hereby specially referred to, and made part of this policy, together with such other provisions, agreements or condi-

tions as may be endorsed hereon or added hereto." Section 10 of said act, approved March 18, 1909 (Stats. 1909, p. 404), provides: "Except as herein otherwise provided, clauses may be attached to the standard form by separate riders in type larger than pica imposing specified duties and obligations upon the insured and limiting the liability of the insurer."

It is contended that, in view of this provision of the act establishing a standard form of insurance policy, the clause above quoted contained in the policies under consideration, gave to the insurer the right, at any future time, and from time to time, to modify and change the policies and add new conditions thereto. Such a construction would strain the language used and would violate basic principles of contract law. It would leave no contract between the parties which would be of any value to the insured, because the insurer might, from time to time, add such provisions and conditions as would absolutely nullify all provisions beneficial to the insured. Furthermore, the provisions of section 10 of said act contemplate an "attachment" of separate riders. The policy becomes the property of the insured after delivery and the insurer could only "attach" riders thereto before delivery to him, or afterwards, with his consent. Said act clearly contemplates a physical attachment.

An insurance policy is subject to the same general rules as other contracts. The provision relied upon by the appellant clearly means that the policy is accepted by the insured subject to all the conditions and stipulations contained in the standard form of policy, and also subject to the provisions of any special riders or indorsements which are a part thereof *at the time he accepts the same.* Any other construction would make the contract lacking in mutuality, by making it binding upon the insured, but subject to be changed about at will by the insurer. Such a construction is not warranted by the language employed nor by the general policy of the law to construe contracts, if possible, in a way that will render them valid and enforceable.

The cases cited by appellant in support of this contention are not in point here. They involve changes in by-laws of mutual benefit associations where the beneficiary agreed to be bound by the laws of the association

and that the same might be changed from time to time. It was held that parties may contract in reference to laws of future enactment and may agree to be bound and affected by them as they would be if such laws were existing. The policies under consideration in those cases contained an express provision that the by-laws of the association might be changed from time to time. Such a provision clearly relates to the future and we find nothing in the language of the policies involved in the present case which is analogous thereto.

Under our conclusion that these riders never modified the terms of the policies because of the fact that they were supported by no new consideration, and plaintiff was not estopped to set up the want of consideration therefor, it becomes unnecessary for us to pass upon the further questions raised in the briefs, such as whether the provisions of said "iron safe clause" constitute a warranty or a representation, and whether or not the record shows a substantial compliance therewith by the plaintiff. These matters become entirely immaterial if the plaintiff was never bound by the provisions of said "iron safe clause."

The judgment is affirmed.

Nourse, J., and Sturtevant, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 17, 1922.

All the Justices concurred, except Wilbur, J., and Lennon, J., who were absent.

Shurtleff, J., was also absent and Richards, J., *pro tem.*, was acting.