RUBY COOPERATIVE COMPANY, A CORPORATION, APPELLEE, V. FARMERS ELEVATOR MUTUAL INSURANCE COMPANY, A CORPORATION, APPELLANT.

250 N. W. 2d 239

Filed February 9, 1977. No. 40720.

Theodore L. Kessner of Crosby, Guenzel, Davis, Kessner & Kuester, for appellant.

Blevins, Bartu, Blevins & Jacobs, for appellee.

Heard before SPENCER, McCOWN, and CLINTON, JJ., and MORAN and KELLY, District Judges.

KELLY, District Judge.

This is an action brought by the plaintiff-appellee, a cooperative grain storage company, against the defendant-appellant, a mutual insurance company, which insured certain buildings owned by the plaintiff. The defendant also insured the plaintiff for contents of the buildings and other forms of insurance used in plaintiff's business, however, these are not particularly important to this action other than as may be stated further in this opinion.

On February 24, 1969, the defendant issued its insurance policy No. 60-854 to the plaintiff herein, insuring thereby certain described buildings and improvements against losses by fire and other perils.

From time to time, the plaintiff erected additional buildings which were included in the contract of insurance by endorsement thereon. The building which is the subject matter of this appeal was a portion of a complex of buildings known as the "Chief Bin" complex which is endorsed on the contract of insurance and coverage was effective April 29, 1970.

The original policy was written for a 5-year term. On December 1, 1973, within the original 5-year term of the policy, a grain storage building in the "Chief Bin" complex was destroyed by fire.

Beginning in the spring of 1973, representatives of the defendant apparently became aware of a condition of the facilities of the plaintiff, and in particular were concerned about the "Chief Bin" complex. They requested that certain changes and procedures be followed to continue the insurance in effect. In a letter of November 2, 1973, the defendant notified the plaintiff that it would cancel the coverage on the six buildings known as the "Chief Bin" complex, effective November 15, 1973. The policy, according to the terms of

the insurance company, was to continue in effect on all other scheduled property.

Upon receipt of the letter of November 2, 1973, the manager of the plaintiff discussed with the board of directors the contents thereof, but no attempt was made by the board of directors of the plaintiff to secure coverage upon the "Chief Bin" complex.

On November 21, 1973, the defendant prepared a change of endorsement for the policy, deleting the coverage on the "Chief Bin" complex, retroactive to November 15, 1973, and indicated on that change of endorsement the amount of the return of the premium which would be paid to the plaintiff. This change of endorsement was received by the manager of the plaintiff, and on November 26, 1973, the defendant issued a check in the sum of $227.25, which represented a return of the premium because of partial cancellation of coverage on the "Chief Bin" complex by the defendant. This check was cashed by the plaintiff on November 29, 1973. The testimony indicated that the check was received in the mail, that there was no letter of transmittal with the check, and there was nothing written on the check indicating why it was issued to the plaintiff.

Because of frequent adjustments between the plaintiff and the defendant it was not unusual, in the course of business, for the plaintiff to pay additional premiums or for the defendant to issue checks for rebate upon insurance coverage based upon the amount of grain in storage.

The trial court ruled that as a matter of law the cancellation of a portion of the contract of insurance, which amounted to a unilateral modification of the contract by the insurance company, was not effective. The matter was submitted upon proper instructions to the jury, and the jury rendered a verdict on the first cause of action in the sum of $8,000. There were two other causes of action included in the loss claimed by

the plaintiff for which judgment was also rendered, however, the defendant has not appealed the verdict on these other causes of action. The trial court overruled the defendant's motion for new trial, and assessed attorney's fees against the defendant, and in favor of the plaintiff, in the sum of one-third of the jury verdict in each cause of action. The defendant appeals the judgment on the first cause of action and the assessment of attorney's fees. We hereby affirm as modified.

The defendant argues, in this court, that the cancellation of the coverage on the "Chief Bin" complex was proper under the provisions of the policy of insurance. The provision relied upon is as follows: "This policy may be cancelled at any time by this Company by giving to the insured a five days' written notice of cancellation with or without tender of the excess of paid premium above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand."

The fallacy of the argument of the defendant is that the defendant did not attempt to cancel the entire policy, but rather attempted to modify by canceling only a portion thereof, to wit, the six buildings known as the "Chief Bin" complex.

The law is set out in the following quotations: "In order that there may be a modification, there must be an agreement therefor, supported by a consideration, and neither party has a right to modify the contract without the consent of the other party." 44 C. J. S., Insurance, § 281, p. 1120.

It has further been held as a general rule of law as follows: "An entire insurance contract is not susceptible of cancellation or rescission in part, at least without the consent of both the insurer and the insured." 43 Am. Jur. 2d, Insurance, § 402, p. 447.

The appellate court of Illinois had this problem·before it in the case of Henderson v. Bankers Life & Cas. Co., 323 Ill. App. 59, 54 N. E. 2d 832. When faced with this question the Illinois court held that a policy of insurance can not be altered without the consent of the insured.

The California court had a similar question presented in the case of Bassi v. Springfield Fire & Marine Ins. Co., 57 Cal. App. 707, 208 P. 154. This particular case is similar in many respects to the instant case. In that case, which involved two fire insurance policies, the court held that a rider which had been attached to one of the policies by the agent of the insurance company some six weeks after delivery of the policies to the insured, which rider contained provisions by which the insured covenanted and agreed to keep his books and inventory of stock securely locked in a fireproof safe at night and at all times when the building mentioned in said policy was not actually open for business, was not binding upon the insured by reason of the fact that the insured did not understand the rider or agree thereto, and no new consideration had passed from the insurer to the insured. It likewise held with reference to the rider to the second policy sued on, which rider was sent through the mail with the request that it be attached to the policy, that said rider never became a part of the contract between the insurer and the insured by reason of the fact that the insured never agreed to put the rider on the policy, and no new consideration passed for the acceptance by the insured of the conditions of the rider.

The California court further adhered to this decision in the case of American Building Maintenance Co. v. Indemnity Ins. Co. of North America, 214 Cal. 608, 7 P. 2d 305.

In this case we therefore find that the defendant attempted to unilaterally modify the contract of insurance by canceling a portion thereof, to wit, the cov-

erage of the "Chief Bin" complex. This the defendant could not do and, therefore, the District Court properly ruled that the insurance coverage was in force at the time of the loss sustained by the plaintiff. The jury properly determined the amount of that loss to be in the sum of $8,000, and that judgment is therefore affirmed.

The second assignment of error made by the defendant is that the District Court did not properly assess attorney's fees under section 44-359, R. R. S. 1943. The trial court at a separate hearing attended by counsel for both the plaintiff and defendant, subsequent to the entry of judgment in favor of the plaintiff, heard testimony from the attorneys of record. At the conclusion of the hearing the trial court found that the attorney for the plaintiff had entered into a contingency fee agreement with the plaintiff in the sum of one-third of the amount of the recovery. The trial court found this to be a reasonable attorney's fee and awarded plaintiff's attorney a fee based upon one-third of the amount of recovery.

This court has previously held in the case of Metcalf v. Hartford Acc. & Ind. Co., 176 Neb. 468, 126 N. W. 2d 471: "In Andrews v. Commercial Cas. Ins. Co., 128 Neb. 496, 259 N. W. 653, the court dealt with this issue in the following language: 'The statute authorizes a reasonable sum as an attorney's fee to be taxed as costs in addition to a judgment on a liability insurance policy. Comp. St. 1929, sec. 44-346. While the allowance is reviewable on appeal, the trial court, in view of all the facts and circumstances, determines in the first instance, in the exercise of sound discretion, what is a reasonable sum. An arbitrary percentage of the recovery on the policy is not necessarily the test. Among the factors in the problem, the court may consider the amount involved; the responsibility assumed; the questions of law raised; the time and labor necessarily required in the performance of duties; the

result of service performed; professional diligence and skill. In re Estate of Rhea, 126 Neb. 571. Whatever is shown in these particulars or observed by the trial judge in the course of the proceedings is open to him for consideration. With these factors in mind, there does not seem to have been an abuse of discretion or an excessive allowance, when the entire record is considered.' "

The trial court in the case before us allowed an attorney's fee in the amount of 33 1/3 percent of the judgment. There is evidence in the record that plaintiff's attorney was handling the case on a contingent fee basis, although the percentage of the recovery to be retained as an attorney's fee is not stated. The allowance of a reasonable attorney's fee under section 44-359, R. R. S. 1943, has no relation to the fee contracted for on a contingency basis. The contingent fee involves risks that are not pertinent to a reasonable attorney's fee for services rendered. There is no evidence in the record as to what constitutes a reasonable attorney's fee for the services rendered in the case.

This court recently, in the case of Schmer v. Hawkeye-Security Ins. Co., 194 Neb. 94, 230 N. W. 2d 216 (1975), also discussed the allowance of attorney's fees pursuant to section 44-359, R. R. S. 1943. Therein it is stated: "In determining the value of legal services rendered by an attorney, it is proper to consider the amount involved, the nature of the litigation, time and labor required, the novelty and difficulty of the questions raised and the skill required to properly conduct the case, the responsibility assumed, the care and diligence exhibited, the result of the suit, the character and standing of the attorney, and the customary charges of the bar for similar services. Allen v. City of Omaha, 136 Neb. 620, 286 N. W. 916. The amount of the allowance generally rests in the sound discretion of the court. Stephens v. Allied Mut. Ins. Co., 182 Neb. 562, 156 N. W. 2d 133.

"The affidavit attached to the motion of the plaintiff's attorney filed in the trial court alleged in detail the correspondence involved in handling the case. It included an itemized time sheet and a statement of expenses incurred. The amount claimed was $6,349.60 including expenses of $615.66. The trial court allowed the sum of $2,460.51 plus $615.66 expenses. We find no abuse of discretion in regard to the amount of the allowance."

It is therefore the opinion of this court that the taxing of attorney's fees as costs in this matter was done improperly by the District Court for Seward County, and that the cause should be remanded for retaxing of the attorney's fees. The court should hold either a detailed hearing requiring testimony and evidence in accordance with prior opinions, or a detailed affidavit to the same. In all other respects the judgment of the District Court for Seward County is hereby affirmed.

AFFIRMED AS MODIFIED.