ROBERT F. CRAIG, TRUSTEE OF CASSIDY LAND & CATTLE COMPANY, INC., APPELLEE AND CROSS-APPELLANT, V. FARMERS MUTUAL INSURANCE COMPANY OF NEBRASKA, APPELLANT AND CROSS-APPELLEE.

476 N.W.2d 529

Filed October 18, 1991.   No. 89-384.

Jeffrey H. Jacobsen and Daniel L. Lindstrom, of Jacobsen, Orr, Nelson, Wright, Harder & Lindstrom, P.C., for appellant.

David D. Begley, of Kennedy, Holland, DeLacy & Svoboda, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

Plaintiff-appellee, Robert F. Craig, as trustee in bankruptcy of Cassidy Land & Cattle Company, Inc., brought this action against Farmers Mutual Insurance Company of Nebraska,

defendant-appellant, on an insurance policy issued by Farmers Mutual to Craig as trustee. The policy provided property damage coverage for certain ranchhouses and other buildings located on a ranch which was a part of the assets owned by the bankrupt Cassidy Land company. In his second amended petition, Craig sought recovery under the policy of $83,583.06 for "buildings and structures on the said real estate [which] were damaged or destroyed by vandalism and malicious mischief." Just before the trial to the court began, Craig, with the approval of the court, reduced his damage prayer to $29,414.28.

Farmers Mutual in its answer admitted that "certain structures . . . were damaged by vandalism," but specifically alleged that

> some of the damage claimed . . . was due to theft which is not covered under the policy issued . . . and . . . that some of the damage . . . was not covered under defendant's policy for the reason that the policy . . . does not extend broad form coverage to all of the structures claimed . . . to have been damaged.

After trial to the court, the court rendered judgment for Craig in the amount of $21,724 plus an attorney fee of $15,000 and costs. Farmers Mutual timely appealed to this court, assigning seven errors, which as argued may be consolidated as alleging that the trial court erred (1) in determining that Craig was the real party in interest; (2) in finding that Craig met his burden of proving the amount of the loss, the loss occurred during the time the policy was in force, and the loss was covered by the policy; (3) in awarding excessive damages; and (4) in awarding excessive attorney fees. Craig has cross-appealed, assigning as error the trial court's actions (1) in granting Farmers Mutual's motion for partial summary judgment in finding, as a matter of law, that the policy did not provide broad form coverage for structures other than two houses and (2) in failing to award prejudgment interest to Craig. We affirm.

With regard to Farmers Mutual's first assignment of error, the record shows that Craig, in his capacity as trustee in bankruptcy, was found to have title to the ranch in question in

late 1986, after a quiet title action in Garfield County, Nebraska. On February 13, 1987, Farmers Mutual issued a "Farm Term" policy to Craig, covering the ranch.

Damage occurred to the ranch buildings before the sheriff evicted the ranch residents on May 28, 1987. On August 13, 1987, Craig, as seller, and Big B, Inc., a Nebraska corporation, executed an "Agreement For Sale and Purchase . . ." for the ranch. Paragraph 21 of the agreement provided:

> Seller [Craig] shall assign to Buyer [Big B, Inc.] all right, title and interest of Seller to any insurance proceeds for damage in regard to any claims prior to the date of this Agreement . . . and for damage in regard to any claim subsequent to the date of this Agreement . . . provided, however, that Buyer shall use any insurance proceeds to repair or improve the property.

Farmers Mutual asserts that this language was an effective assignment of Craig's entire interest in the insurance contract and he therefore lacks standing to bring this suit as the real party in interest, citing Neb. Rev. Stat. §§ 25-301 and 25-302 (Reissue 1989). Farmers Mutual argues that Big B, Inc., as the assignee of a chose in action, "is the proper and only party who can maintain suit thereon." Brief for appellant at 37.

Craig contends that the language of the sale agreement indicates an agreement for future assignment of interest in the proceeds of an insurance policy. The court below found that the insurance proceeds for damages were assigned, but that the cause of action for the proceeds and attorney fees was not. In *Tilden v. Beckmann*, 203 Neb. 293, 300, 278 N.W.2d 581, 586 (1979), this court held that "the intention of the assignor must be to transfer a present interest in the debt or fund or subject matter; if this is clearly expressed, the transaction is an assignment; otherwise not." In this case, the evidence shows that Craig had no intent to transfer a present interest in the policy, but, rather, that he agreed to transfer the proceeds, if any, of the policy when those proceeds were obtained.

The language of paragraph 21 of the sales agreement, and the document as a whole, leads to the conclusion that the intent of the parties to the agreement was that an assignment of the proceeds was to be made upon conclusion of whatever legal

action was necessary to collect those proceeds. The provision that "Seller shall assign to Buyer all right, title and interest of Seller to any insurance proceeds for damage," when considered as part of the entire document, reflects an agreement to assign in the future. This approach made it possible to close on the sale before resolution of this action. This provision, then, is not an assignment of policy rights but, rather, an agreement to assign proceeds of the policy. The provision does not operate to divest Craig of the capacity to bring this action. Farmers Mutual's assignment of error in this regard is without merit.

Farmers Mutual's second assignment of error may be separated into three subissues: Craig failed to meet his burden of proving (1) that the loss occurred during the effective dates of the policy, (2) that the policy covers the claimed loss, and (3) the amount of the claimed loss that is payable under the policy.

In an action at law the factual findings of the trial court in a jury-waived case have the effect of a jury verdict and will not be set aside unless clearly wrong. *Brown v. Clayton Brokerage Co.*, 238 Neb. 646, 472 N.W.2d 381 (1991); *Waite v. A. S. Battiato Co.*, 238 Neb. 151, 469 N.W.2d 766 (1991). On review of such a case, we do not reweigh the evidence but, instead, consider the judgment in the light most favorable to the prevailing party. *Id.*

Circumstantial evidence, however, is not sufficient to sustain a finding depending solely thereon for support, unless the circumstances proved by the evidence are of such nature and so related to each other that the conclusion reached by the court is the only one that can fairly and reasonably be drawn therefrom. *Ditloff v. State Farm Fire & Cas. Co.*, 225 Neb. 375, 406 N.W.2d 101 (1987).

The evidence at trial showed that a brick house was damaged sometime after the effective date of the Farmers Mutual insurance policy, February 13, 1987. On February 2, 1987, Sheriff Studnicka served the residents of the ranch with a 3-day notice to quit the premises. At that time he saw nothing out of the ordinary. On May 28, 1987, the sheriff returned to the ranch to serve a writ of assistance, which commanded him to remove all occupants of the premises. He saw a different situation, a house which was an empty shell. Farmers Mutual contends that

it is plausible to conclude that at some time between February 2 and February 13, 1987, the residents of the Cassidy ranch, or others, ransacked the ranchhouse and removed furnishings (including major appliances, a commode, sinks, and a well pump) and that Cassidy family members continued to live in this brick skeleton of a house for another 3 months, without official complaint. This contention is not plausible.

Further, Shirley Lowery, who lived near the ranch in question, testified that she and her husband had made a written offer to Craig sometime in April 1987 to purchase the ranch. On May 23, 1987, the Lowerys received in the mail an invitation to "Cassidy's Eviction," to be held on May 24 at the ranchhouse, "Given by Lowery's [sic]." The invitation was unsigned, and the envelope showed no return address. On May 24, the couple drove past the ranch and saw a truck backed up to the brick house. Further, Sheriff Studnicka testified that his office received no reports of vandalism from any resident of the ranch at any time before May 28, 1987.

Though the evidence supporting the finding of the trial court is circumstantial, the fair and reasonable inference to be drawn therefrom is that this damage occurred after the effective date of the policy. Farmers Mutual's assignment of error in this regard is without merit.

Next, Farmers Mutual contends that Craig failed to prove that the loss was covered by the policy. The policy, in this regard, states that it insures against: "9. Vandalism and Malicious Mischief. This peril does not include loss: . . . (b) by pilferage, theft, burglary, or larceny, but we shall be liable for damage to the building covered caused by burglary." Farmers Mutual contends that the majority of the damages sought by Craig are for items which were stolen and are therefore not covered by the policy. It is important to note that in its pleadings and evidence at the trial, Farmers Mutual admits that some vandalism occurred, but questions the amount of that vandalism.

When asserting breach of an insurance contract, the plaintiff has the burden of bringing his claim within the limitations of the policy. *Ditloff v. State Farm Fire & Cas. Co., supra.* Craig must, therefore, prove both that the loss was the result of

vandalism and that it was accompanied by intent and malice.

In *Swedberg v. Battle Creek Mut. Ins. Co.*, 218 Neb. 447, 356 N.W.2d 456 (1984), we discussed the nature of vandalism and malicious mischief, as well as a party's burden of proving it. "Malicious mischief" and "vandalism" describe wanton or reckless acts intended to destroy or damage the property. A party must prove by a preponderance of the evidence, direct or circumstantial, that the damage was caused by acts intended to damage the property.

To bring his claim within the policy limitations, Craig contends that items removed from the premises, such as curtain rods, sinks, kitchen cabinets, etc., were taken only in furtherance of, and incidental to, the violence wrought upon the property. Farmers Mutual contends that the items were taken in order to appropriate the items for the wrongful personal use of the thief. The question is whether the items were removed with the intent to convert or to use such items inconsistent with the owner's rights, or whether the acts against these houses may more appropriately be characterized as willful destruction of property because of actual ill will or resentment.

Testimony at trial described threatening phone calls made to the Lowerys. Mrs. Lowery stated she became aware of an attitude change on the part of the Cassidys toward her and her husband. The Lowerys received threatening phone calls after they showed an interest in buying the ranch.

Craig himself was threatened. Craig testified that a few days after he was appointed, he introduced himself to one of the Cassidys and was told that he, Cassidy, did not need a trustee. During the course of his trusteeship he was threatened "to be punched in the nose [and] put under the sod." Craig was told by the Cassidys that "we are going to get even with you." He was sued by the Cassidys for $100 million.

Further evidence was adduced showing that after receiving title to the ranch, Craig contacted an insurance broker, and they discussed reinsuring the property. Rather than inspecting the premises to value the ranch, the broker had an employee go there and sketch a plot layout from the road. When asked why he did not go to the ranch, the broker testified that he feared he would be shot. The broker had been the Cassidys' insurance

agent for 17 years.

As for the brick house itself, carpeting was torn up in several rooms and was left where it was or discarded in the front yard of the house. Light fixtures were removed from the ceilings of several rooms, some without measures to cover the ends of the wires. Large holes were found in the walls of several rooms, caused by pulling curtain rods out of the wall. Suspended ceilings had various degrees of damage done to them. Hanging cabinets, as well as an entire 8- to 10-foot floor-mounted "island of some kind," had been removed from the kitchen. A carpenter testified these hanging cabinets appeared to have been removed with a hammer and a crowbar or at times by punching a hole through the Sheetrock walls. A stool, a lavatory, shower doors, and a medicine cabinet had been removed from one of the brick house's bathrooms.

Photographs and trial testimony support the finding by the trial court that a motive of malice was present on the part of those who performed the acts against this property. The contention of Farmers Mutual that the policy did not cover the claimed loss is without merit.

Farmers Mutual then contends that the trial court erred in calculating the amount of damages due Craig under the policy. In part, Farmers Mutual argues, "The testimony reflects that a substantial amount of the loss claimed by Craig is related to items that were replaced merely because they were worn out." Brief for appellant at 35. At trial, Farmers Mutual adduced evidence from its claims adjuster as to labor in the amount of $3,033 "to replace missing items" and evidence of $2,047 of "vandalized items." As stated above, Farmers Mutual recognizes there was some vandalism or malicious mischief, but contends the court erred in determining the amount of those damages.

In this regard, the policy states:

2. How Losses Are Settled.

Loss to covered property will be settled at the actual cash value of the damaged property at the time of loss. Actual cash value includes deduction for depreciation.

We will pay no more than the lesser of:

(a) the cost to repair or replace the damaged property

with property of like kind and quality, subject to deduction for depreciation; or

(b) the limits of liability of this policy.

In his amended petition, as filed, Craig sought damages of $83,583.06 as his loss under the policy. Just before the trial began, Craig amended his prayer to $29,414.28. Lengthy testimony from workmen, together with many invoices in great detail, was submitted to support the amount of damages claimed.

In *Ohnstad v. Omaha Public Sch. Dist. No. 1*, 232 Neb. 788, 442 N.W.2d 859 (1989), we repeated the rule that in a law action tried to the bench, the court is the sole judge of questions of fact and is the judge of the credibility of the witnesses. A determination by the trial court will not be reversed absent a showing of an abuse of discretion. In this case, nearly $84,000 was spent to refurbish the ranch property. At trial the trial court determined that the amount necessary to repair the vandalized items was $21,724.

The trial court carefully considered what invoices constituted the repair of damages caused by vandalism and what labor and material invoices constituted improvements to the premises beyond the condition the premises were in before the vandalism occurred. In so doing the trial court found that the award "to repair the vandalism" was $21,724, and rendered judgment in favor of plaintiff for that amount. There is sufficient evidence in the record to support that finding. Farmers Mutual's assignment of error in this regard is without merit.

Farmers Mutual then contends that the trial court's award of attorney fees was both unwarranted and excessive. Neb. Rev. Stat. § 44-359 (Reissue 1988) states, "In all cases when the beneficiary . . . brings an action upon any type of insurance policy . . . the court . . . shall allow the plaintiff a reasonable sum as an attorney's fee . . . ." Obviously, Craig's action in this case was brought upon a type of insurance policy. We have held that "the amount of attorney fees allowed pursuant to Neb. Rev. Stat. § 44-359 . . . rests generally in the . . . discretion of the trial court." *Malerbi v. Central Reserve Life*, 225 Neb. 543, 557, 407 N.W.2d 157, 166 (1987).

Craig's recovery of attorney fees was based upon documentation regarding time spent, air travel expenses incurred, and rates charged by his attorney. Farmers Mutual would have the court limit both the dollar-per-hour rate at which Craig's counsel should bill his time and the recovery amount to a one-third percentage of the actual final recovery. Farmers Mutual argues by implication that Craig could have hired a local attorney of equal competence who charges a lower rate and would not need to spend time and money on air travel. Also, Farmers Mutual asserts, "Any attorney fee recovered in this matter should be limited to not more than one-third of the recovery on the actual claim." Brief for appellant at 39.

In *Ruby Coop. Co. v. Farmers Elevator Mut. Ins. Co.*, 197 Neb. 605, 250 N.W.2d 239 (1977), this court examined a trial court's allowance of attorney fees in the amount of one-third the judgment, based on evidence adduced at a posttrial hearing. The amount awarded was based on evidence that the attorney was handling the case on a contingent fee basis. We stated that a contingent fee involves risks that are not pertinent to a reasonable attorney fee for services rendered and remanded the cause for a determination of a reasonable attorney fee.

We stated:

> "In determining the value of legal services rendered by an attorney, it is proper to consider the amount involved, the nature of the litigation, the time and labor required, the novelty and difficulty of the questions raised and the skill required to properly conduct the case, the responsibility assumed, the care and diligence exhibited, the result of the suit, the character and standing of the attorney, and the customary charges of the bar for similar services. . . ."

*Id.* at 611, 250 N.W.2d at 243.

In view of the situation faced by Craig and the practical problems inherent in representing the trustee in this case, the trial court did not abuse its discretion in setting the attorney fee in this case. This assignment of error is without merit.

Craig assigns two errors in his cross-appeal: The trial court erred (1) "in granting [Farmers Mutual's] motion for partial summary judgment in finding that, as a matter of law, the insurance policy did not provide broad form coverage for

structures other than house no. 1 and house no. 2" and (2) in failing to award Craig prejudgment interest.

With regard to the first assignment, the policy provides specific "Broad Form" coverage, for a specific premium, for "Dwelling #1" and "Dwelling #2." No broad form coverage is provided for other structures listed in the policy declarations. We agree with Farmers Mutual that there is no ambiguity in the policy and that broad form coverage was provided for the two listed dwellings only. The trial court did not err in granting summary judgment to Farmers Mutual on this issue.

Craig then contends that the trial court erred in not granting him prejudgment interest on the judgment he received. We have held that "[w]hen reasonable controversy exists concerning the claimant's right to recover or the amount of such recovery, the claim is unliquidated, and prejudgment interest is not allowed." *Lutheran Medical Center v. City of Omaha*, 229 Neb. 802, 810, 429 N.W.2d 347, 352 (1988). In this case, while it might be considered that vandalism had indeed occurred, there was a great deal of controversy as to the amount of damages. Just before trial, apparently based on the granting of partial summary judgment, Craig reduced his claim from approximately $84,000 to approximately $29,000. The trial court's judgment was for less than the amended claim. The trial court did not err in refusing to grant prejudgment interest.

In this connection, we note that no reference is made to the provisions of Neb. Rev. Stat. §§ 45-103.02 to 45-103.04 (Reissue 1988). In view of our disposition of the question of prejudgment interest and the posture of the case, we need not discuss those statutes.

The trial court's judgment is affirmed in its entirety. Craig is granted $3,500 to be applied on his attorney fees in this court.

AFFIRMED.