James **WARRICK**, et al., Appellants,

v.

**GRAFFITI, INC.,** d/b/a Howie's Sports Bar, Park Glen National Insurance Company, Kenneth Finken, d/b/a Sportsmans, Inc. a/k/a Sportsmans Bar & Grill, a/k/a McSports, Inc., Empire Fire and Marine Insurance Company, Respondents.

No. C3-96-220.

Court of Appeals of Minnesota.

June 25, 1996.

Review Denied Sept. 20, 1996.

William J. Cashman, Rajkowski & Hansmeier, Ltd., St. Cloud, for Appellants.

Harry E. Burns II, Burns Law Offices, P.A., St. Cloud, for Respondent Graffiti, Inc.

Jeremiah P. Gallivan, Scott H. Rauser, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, for Respondent Part Glen National Insurance Company.

G. Barry Anderson, Arnold & McDowell, Minneapolis, for Respondent Kenneth Finken.

Richard J. Chadwick, Richard A. Koehler, Chadwick & Associates, Chanhassen, for Respondent Empire Fire and Marine Insurance Company.

Considered and decided by PARKER, P.J., and RANDALL and SCHUMACHER, JJ.

## OPINION

PARKER, Judge.

The district court concluded that because respondent Park Glen National Insurance Company (Park Glen) had complied with Minnesota case law regarding notification requirements, the new language in its renewal policy issued to Graffiti, Inc., d/b/a Howie's Sports Bar (Howie's), was effective and applied to appellants' claims for damages. The district court also granted appellants' request

for prejudgment interest under the new policy language. Appellants challenge the district court's decision, arguing that an insurer may not unilaterally change the terms of an effective insurance policy merely by providing notice to the insured. Park Glen cross-appeals, arguing that even under the new policy language, appellants are not entitled to prejudgment interest. We reverse and remand.

## FACTS

In November 1991, James Warrick was struck by the automobile of an intoxicated driver as Warrick was crossing a street in St. Cloud, Minnesota. Warrick suffered the amputation of his right leg below the knee, the loss of the use of his right arm, and a cervical injury that has rendered him a paraplegic. Warrick and his spouse, Wanda Warrick, brought a civil action against four bars where the intoxicated driver had been drinking prior to the accident: The Blue Heron Americana Inn, BookEms Bar, Graffiti, Inc., d/b/a Howie's Sports Bar, and Sportsmans Bar & Grill.

The Warricks settled their claims against all defendants. The terms of the settlement required Howie's to enter a *Miller–Shugart* agreement with the Warricks. The agreement provided that Howie's liquor liability carrier, Park Glen, would pay the $50,000 bodily injury limits to James Warrick and the $50,000 loss of means of support limits to Wanda Warrick. The parties also agreed that Wanda Warrick's claim for pecuniary losses exceeded $200,000. The Warricks then commenced this action, seeking a declaratory judgment that Howie's Park Glen insurance policy provides coverage for Wanda Warrick's pecuniary loss damages up to the aggregate policy limits of $300,000.

In May 1991, Park Glen issued a liquor liability policy to Howie's Sports Bar. The declaration page of the policy stated that it was a renewal of Howie's current liquor liability policy. The declaration did not, however, inform Howie's that certain changes had been made to the policy language. Although the policy went into effect July 1, 1991, Park Glen maintains that the precise terms of the contract were not finalized until September

4, 1991, when the Insurance Commissioner approved the changes in the policy. In support of this contention, Park Glen relies on an affidavit by its underwriting and claims manager, Joan Erdman:

> In May 1991 Park Glen agreed in principle to provide Graffiti, Inc. [Howie's] with liquor liability insurance for the time period from July 1, 1991 to July 1, 1992. The precise terms of the contract with Graffiti, Inc. were not finalized until Park Glen's Liquor Liability Insurance contract was approved by the Minnesota Insurance Commissioner in September 1991.

Sometime after the Commissioner approved the changes, and four months after the renewal but before the accident that is the subject of this litigation, Park Glen mailed Howie's a written notice of the changed policy language.

Warrick was injured during the effective period of the renewal policy. Park Glen relies on the new language in the policy to deny Mrs. Warrick's claims for pecuniary loss damages because under the terms of the new policy, "loss of means of support" explicitly includes "pecuniary losses," and the policy limit for loss of means of support has already been exhausted. The district court concluded that because the new language has, "at the least, the effect of definitively limiting pecuniary loss damages to the loss of support damages limit," the change is substantial, thus requiring notification to the insured. Below, Park Glen argued that there had been no reduction in coverage due to the new language, but only a clarification.

The district court held that because Howie's had been properly notified of the policy changes under *Canadian Universal Ins. Co., Ltd. v. Fire Watch*, 258 N.W.2d 570, 575 (Minn.1977), the changes were effective and thus precluded Mrs. Warrick from recovering pecuniary loss damages from Park Glen because the policy limit for loss of means of support had already been exhausted. The district court also granted the Warricks' request for prejudgment interest under new language in the renewal policy.

The Warricks maintain that the district court erred because an insurance company

may not unilaterally change the terms of an effective insurance policy merely by giving notice to the insured. Park Glen cross-appeals, arguing that even under the new policy language, the Warricks are not entitled to prejudgment interest.

## ISSUES

**I.** Is the new language in the renewal policy effective?

**II.** Are the Warricks entitled to prejudgment interest?

## DISCUSSION

### I.

Appellant Warrick argues that the unilateral changes in policy language, which he asserts reduce coverage, cannot be given effect because Howie's was not notified of the changes at the time of renewal, did not consent to the changes, and was given no consideration for them. Respondent Park Glen argues that the insurance policy can be substantially modified so long as the insurer notifies its insured of the changes in the policy. Park Glen relies on the following language from a Minnesota Supreme Court case:

> [W]e adopt as the rule in Minnesota that, when an insurer by renewal of a policy or by an endorsement to an existing policy substantially reduces the prior insurance coverage provided the insured, the insurer has an affirmative duty to notify the insured in writing of the change in coverage. Failure to do so shall render the purported reduction in coverage void.

*Canadian Universal,* 258 N.W.2d at 575. That language, however, which imposes an affirmative duty of notice on insurers, does not relieve insurers of other duties owed to

their insureds. Furthermore, it does not purport to change the general principles of contract law as they pertain to insurance policies. *See* 2 Lee R. Russ & Thomas F. Segella, *Couch on Insurance 3d* § 25:1 (1995) ("Above all, it must be recognized that modification of insurance policies is governed by the general rules applicable to contracts."). The insured in *Canadian Universal* consented to [1] and signed the endorsement that was sent to him after he received the original policy: "[I]t is obvious that although he [the insured] accepted the endorsement he still was uncertain about the coverage * * *." *Canadian Universal,* 258 N.W.2d at 573.

Park Glen also cites *Midway Nat. Bank of St. Paul v. Bollmeier,* 474 N.W.2d 335, 340 (Minn.1991). *Midway* involved a personal liability policy originally purchased in 1976. *Id.* at 339. The policy was changed into a "personal umbrella policy" in 1983. *Id.* The new policy reduced coverage, but State Farm did not provide notification of the change in coverage when the contract was modified. *Id.* The court held, therefore, that the modification did not apply to a claim arising in 1986. *Id.* at 340. Thus, although *Midway* reaffirms the *Canadian Universal* rule, it does not suggest that notice is the only requirement that must be met. Nor does that case suggest that an insurer may unilaterally change the terms and conditions of a policy that has already taken effect.

We note that if an insurer gives adequate notice of policy changes at the time of renewal, consent will ordinarily not be an issue because it may be implied by the insured's act of renewing the policy. Thus, the cases cited by Park Glen generally do not discuss the issue of consent [2] but, rather, focus on whether there was adequate notice. In this case, because notice was not given

---

**1.** The endorsement, which was signed by the insured, provided in part:

In consideration of the premium charged it is *mutually* agreed and understood that such coverage as is afforded by the policy shall not apply to * * *.

*Id.* at 573 (emphasis added).

**2.** For example, Park Glen cites *Campbell v. Insurance Serv. Agency,* 424 N.W.2d 785, 790 (Minn.Ct.App.1988), and *Adams v. Greenwood,* 10 F.3d 568 (8th Cir.1993). Consent was not an

issue in those cases because the insurers were not attempting to rely on notice that was given after the policy had become effective. *See Campbell,* 424 N.W.2d at 790 (changes not effective because "[t]he Campbells received no cover letter * * *. In fact, the agent did not even know of the sweeping changes."); *Adams,* 10 F.3d at 572 (changes effective because "Midwest was adequately notified * * * before entering the * * * contract").

until after the policy became effective, consent may not be implied by renewal of the policy.

Park Glen also cites a Minnesota case for the proposition that when an insured receives and retains an insurance contract without objection, the insured accepts the terms and conditions of the contract. *Adams v. Eidam,* 42 Minn. 53, 54, 43 N.W. 690 (1889). We observe, however, that in the past 100 years, Minnesota's law on insurance has changed, particularly with respect to renewal policies. *See Canadian Universal,* 258 N.W.2d at 570.

Finally, Park Glen apparently argues that notice and consent are one and the same for purposes of insurance contracts, i.e., Park Glen seems to think that if the insured has been notified, the insured has consented:

> As recognized by commentators, an insurer's obligation to provide notice satisfies *its* burden with respect to the issue of mutual assent * * *.

Park Glen quotes *Couch on Insurance:*

> Closely related to the question of consent is the issue of notice, usually if not always meaning notice to the insured. * * * The issue is, in effect, a variation on the need for consent or acceptance by the parties, but has become phrased in terms of notice due, at least in part, to the fact that many statutes and judicial decisions have adopted the requirement of "notice" when a policy's coverage is being materially altered.

2 Lee R. Russ & Thomas F. Segella, *Couch on Insurance 3d* § 25:21 (1995) (footnotes omitted).

*Couch,* however, does not purport to treat consent differently in the context of insurance contracts from how it is treated in other contexts:

> As in the case of all contractual relations, it is necessary that the intent to modify the contract be manifested, which is, in many cases, subsumed in the analysis of whether there has been consent to modify the contract.

> \* \* \*

> A modification which will bind the parties must be based on all the elements required

to initially make a binding contract of insurance * * *. In effect, the concept of "consent" to a modification is equivalent to the acceptance of that proposed change.

> \* \* \*

> The need for mutual consent exists even though the original contract recognizes that modification can be made by the attachment of rider clauses. Thus, a provision of a standard policy allowing clauses and the like to be attached to the standard form does *not* permit the insurer to attach modifying riders after the policy has been delivered, without the consent of the insured.

*Id.* at § 25:15–16 (footnotes omitted) (emphasis added). *Couch* does not suggest that modification may take place so long as the insured is notified.

Park Glen also cites *Holt v. Swenson,* 252 Minn. 510, 516, 90 N.W.2d 724, 728 (1958), holding that silence may sometimes be regarded as acceptance of an offer. The court in that case was careful to qualify this principle by stating that it applies "where the relation between the parties is such that the offeror is justified in expecting a reply * * *." *Id.* Furthermore, in the present case the issue is the modification of an already existing contract, not merely the acceptance of an offer.

Regarding silence as consent, *Couch* states:

> A memorandum to the insured, sent after a contract of insurance is effected, modifying the original terms is not deemed to have been accepted or acquiesced in by the insured merely because of his or her silence respecting it, where it is not shown that the insurer was influenced in its conduct by the silence of the insured.

> If the insurer, after issuing a policy insuring against accident, notifies the insured of a change of classification greatly lessening the amount of the insured's indemnity, the insured's assent to such change is not to be conclusively inferred where the insured does not expressly assent, or forward his or her policy to have it

rewritten as requested, and where the dues and assessments paid, and required to be paid, are the same as before.

*Id.* at § 25:18. Thus, *Couch* indicates that the letter sent to Howie's after the policy was in effect cannot be deemed to have been accepted merely because Howie's did not object. Furthermore, the above excerpt demonstrates that *Couch*, contrary to Park Glen's apparent assertion, does not treat notice as creating consent because it describes a situation in which notice is given, but consent is nonetheless lacking.

Authority from other jurisdictions also indicates that consent is a necessary element to modifying an effective policy. *See Home Indemnity Co. of New York v. City of Mobile*, 477 So.2d 312, 315 (Ala.1985) ("There can be no modification of an insurance policy unless both parties have agreed to the modification."). The Washington Court of Appeals explained the effect of a unilateral modification of an insurance policy by the insurer as follows:

Following the issuance of the policy here, Oregon Mutual attempted to unilaterally amend it to take advantage of changes in the law which authorized the prohibition of stacking. But this required a change in the contract of insurance which, in turn, required a meeting of the minds and an agreement. Notice *and* agreement must be obtained before amendments or modifications to insurance policies can be made by the insurer.

*McGreevy v. Oregon Mutual Ins. Co.*, 74 Wash.App. 858, 876 P.2d 463, 469 (1994) (emphasis added); *see also Georgia Baptist Children's Homes & Family Ministries, Inc. v. Essex Ins. Co.*, 207 Ga.App. 346, 427 S.E.2d 798 (1993) (insurer's revision of exclusion was unauthorized unilateral modification of contract and could not be considered part of policy).

The Supreme Court of North Dakota has approved of the following jury instruction as a correct statement of the law in North Dakota:

An insurance contract may be modified by endorsement. The parties to the contract may make such modifications thereof as they may mutually agree upon. An endorsement proposed by one party only, and not consented to by the other, will not effect a modification of the insurance policy.

\* \* \*

Consent or acquiescence by the silence of an insured to a modification of an insurance policy will result only if the insurer was injured or influenced in its conduct by the silence of the insured.

*Anderson v. American Standard Ins. Co.*, 293 N.W.2d 878, 883 (N.D.1980).

In *Ruby Coop. Co. v. Elevator Mut. Ins.*, 197 Neb. 605, 250 N.W.2d 239 (1977), representatives of the insurer became aware of a condition of the insured's facilities and were particularly concerned about buildings called the "Chief Bin" complex. *Id.* 250 N.W.2d at 241. The insurer requested that changes be made and notified the insured, by letter, that it would cancel coverage on the "Chief Bin" complex, effective November 15, 1973. *Id.* The insured's board of directors discussed the letter but made no attempt to secure coverage. *Id.* The insurer issued an endorsement reflecting the change and sent a check representing the return of a portion of the insured's premium. *Id.* Shortly thereafter, the building complex at issue was destroyed by fire. *Id.* The Supreme Court of Nebraska stated:

In this case we \* \* \* find that the defendant attempted to unilaterally modify the contract of insurance by cancelling a portion thereof, to wit, the coverage of the "Chief Bin" complex. This the defendant could not do and, therefore, the District Court properly ruled that the insurance coverage was in force at the time of the loss sustained by the plaintiff.

*Id.* 250 N.W.2d at 242.

Based on the foregoing cases and authorities, we conclude that the district court erred by ruling that notification of the changes in the renewal policy, after the policy became effective, was sufficient to effect changes in the policy that were adverse to the insured. We hold, rather, that when an insurer does not notify the insured of such changes in a renewal policy until after the

policy has become effective, those changes can have no effect if the insured has not consented to them.

Appellants argue that Park Glen cannot change the terms of its policy without a corresponding reduction in the premium. Park Glen responds:

> Parties can alter their contract by mutual consent, and this requires no new consideration, for it is merely the substitution of a new contract for the old one, and this is of itself sufficient consideration for the new.

*Olson v. Penkert,* 252 Minn. 334, 347, 90 N.W.2d 193, 203 (1958) (quoting *Wilson v. Hayes,* 40 Minn. 531, 540, 42 N.W. 467, 471 (1889)). In the present case, however, there was neither mutual consent nor consideration.

There is another basic reason that the district court order cannot stand:

> It is firmly settled that insurance contracts are contracts of adhesion between parties not equally situated. Consequently, the insurer must bring to the insured's attention all provisions and conditions that create exceptions or limitations on the coverage. The insurer who makes basic insurance coverage changes is obligated to inform the insured by cover letter or a conspicuous heading to the amendatory endorsement. Exclusions must be so prominently placed and so *clearly phrased* that "he who runs can read."

*Campbell,* 424 N.W.2d at 790 (citing *Canadian Universal,* 258 N.W.2d at 574–75) (emphasis added).

■ The district court concluded that the modifications at issue had the effect of "definitively limiting pecuniary loss damages to the loss of support damages limit." Yet, Park Glen's notice did not suggest that the changes to the policy language might have such a significant effect on the limits of coverage. Respondent argues that appellants may not raise on appeal the issue of the legal sufficiency of the language in the notice because it was not raised below. Because notification in this case was untimely, occurring after the policy had already been renewed, we need not address its legal sufficiency in other respects. We observe in passing, however, that under the above mandates from *Canadian Universal* and *Campbell,* Park Glen's notice appears to have serious deficiencies.

## II.

■ Park Glen has filed a notice of review, arguing that the district court erred by denying its motion for summary judgment on the issue of prejudgment interest, thereby awarding the Warricks prejudgment interest on the $50,000 paid for bodily injury and on the $50,000 paid for loss of support.

The district court found that under both the terms of the revised insurance policy, which it found to be applicable, and under Minn.Stat. § 549.09, subd. 1 (1994), the Warricks were entitled to prejudgment interest from the time Howie's was first put on notice of the claim until Park Glen made an offer to pay the policy limits for bodily injury and loss of support damages.

The revised policy provides:
The company will pay, in addition to the applicable limit of liability:

\* \* \*

(e) prejudgment interest awarded against the *insured* on that part of the judgment which is within the applicable policy limits. If the company makes an offer to pay the applicable limit of insurance, the company will not pay any prejudgment interest based on that period of time after the offer.

Park Glen argues that because there was never any judgment or award in this case with respect to the Warricks' claims against Howie's, the district court improperly awarded prejudgment interest. In light of recent decisions of this court, we agree with Park Glen.

In *Great West Cas. Co. v. Barnick,* 529 N.W.2d 504 (Minn.App.1995) (*Great West I* ), this court held that where a policy provided for payment of prejudgment interest awarded against the insured on the part of the *judgment* paid by the insurer, the insurer was not obligated to pay prejudgment interest after the parties settled on the policy limits, because no action was ever filed and

no judgment or award ever entered. *Id.* at 506.

Prejudgment interest under Minn.Stat. § 549.09, subd. 1, is inappropriate for the same reason. In *Great West Cas. Co. v. Barnick,* 542 N.W.2d 400 (Minn.App.1996) (*Great West II* ), this court held that prejudgment interest will not apply to settlements reached prior to any litigation, *id.* at 401–02, under Minn.Stat. § 72A.201, subd. 12 (1992), which provides:

> If a judgment is entered against an insured, the principal amount of which is within the applicable policy limits, the insurer is responsible for their insured's share of costs, disbursements, and prejudgment interest, as determined under section 549.09, included in the judgment even if the total amount of the judgment is in excess of the applicable policy limits.

Minn.Stat. § 549.09, subd. 1(a), provides:

> When a judgment or award is for the recovery of money, including a judgment for the recovery of taxes, interest from the time of the verdict, award, or report until judgment is finally entered shall be computed by the court administrator or arbitrator as provided in clause (c) and added to the judgment or award.

Thus, *Great West I & II* indicate that prejudgment interest is inappropriate in this case under both the new policy language[3] and Minn.Stat. § 549.09, subd. 1, because there was no judgment or award that could serve as the basis for a prejudgment interest award.

## DECISION

The terms of Park Glen's revised liquor liability policy are not applicable to this case because Park Glen attempted to modify the terms without obtaining the insured's consent, without providing timely notice of the modifications, and without giving any consideration to the insured. The trial court also erred by awarding prejudgment interest because there was no actual judgment or award upon which it could properly be based. We

reverse and remand to the district court to determine the limits for pecuniary loss damages under the former policy language and for such further consideration necessary, consistent with this opinion.

**Reversed and remanded.**

---

3. We note that although changes to policy language that are adverse to an insured are not effective in the absence of timely notice and consent, changes that are favorable to the insured may be effective once notice has been given. *See Canadian Universal,* 258 N.W.2d at 575 (failure to notify renders "the purported *reduction* in coverage void") (emphasis added).