JOHN L. CAREY ET AL., APPELLANTS, V. SAMUEL BECKER ET AL., APPELLEES.

FILED MAY 8, 1924.     No. 22779.

1. **Appeal: DIRECTION OF VERDICT.** Where there is a substantial conflict in the evidence upon a question which is material to the issues, it is error to direct the jury to return a verdict for either party.

2. **Contracts: NOVATION.** One party to a contract may not substitute a third person in his stead without the consent of the other contracting party.

APPEAL from the district court for Holt county: ROBERT R. DICKSON, JUDGE. *Reversed.*

*J. J. Harrington,* for appellants.

*J. A. Donohoe, contra.*

Heard before MORRISSEY, C. J., LETTON and ROSE, JJ., REDICK and BLACKLEDGE, District Judges.

LETTON, J.

This action is brought to recover the sum of $2,000, which it is alleged is the proceeds of a check and promissory note which were deposited in the defendant bank in escrow to be paid to defendant Becker on the signing of a contract of sale of land by the owner of the land. It is alleged that the contract was never signed by the owner. and that defendants wrongfully converted the money to their own use. Defendants plead that the contract was signed and deposited as agreed upon by the parties, that the payment was

authorized, and that the owner of the land is ready and willing to perform the contract. From a judgment upon a directed verdict for defendants, plaintiffs appeal.

The evidence on behalf of plaintiffs is to the effect that, induced by one Mrs. Norton, who resided in Iowa, but who was interested in a ranch in Holt county, and also dealt in real estate, the plaintiffs, who resided at Anita, Iowa, came to Holt county. They met defendant Becker, who told them that he was the agent for the owner of a tract of 160 acres of land, that he thought he could sell it for $62 an acre, but would have to communicate with the owner, Mrs. King, who lived at O'Neill, in order to know whether she would accept that price, before he was authorized to sell it. Plaintiffs agreed to buy. A contract was executed describing "Samuel Becker, agent," as the vendor, and the plaintiffs as vendees. This contract was deposited by mutual consent in escrow in the First National Bank of Atkinson, with instructions that, if the contract were signed by Mrs. King, a check for $1,500, which was also deposited, and a note for $500 dated June 14, 1920, payable 90 days after date, were to be delivered to Becker for the owner. The plaintiffs were to be informed by telegraph when the contract was signed. If Mrs. King did not sign the contract, the money and papers were to be returned to plaintiffs. On the 16th day of June they received the following telegram: "Terms and price of land in contract accepted by owner. Samuel Becker." On the 18th day of June they received the following: "Mrs. Clyde King signed and deposited with this bank. First National Bank." After this telegram was received, believing that Mrs. King had signed the contract, plaintiffs instructed their banker at Anita to pay the check. The note was paid on September 20, and the defendant bank paid the proceeds of the check and note to Becker. Afterwards, desiring an extension of time for the payment of $2.500, falling due March 1, 1921, plaintiffs called upon Mr. O'Donnell, a banker in O'Neill, and he made arrangements with Mrs. King that the contract was to be extended one year on the payment of $500. An extension contract and

draft were afterwards sent to O'Donnell and returned by him, since she had sold the land to another party. On the same day the contract of sale was entered into between Becker and plaintiffs. Becker, with one Dr. Waynick (who had written the contract for the parties), called upon Mr. King, who was acting as Mrs. King's agent, in O'Neill. Waynick entered into a contract to purchase the land from Mrs. King for the sum of $9,600 ($60 an acre) paying $1,000 cash in hand, the contract also providing that $3,200 should be paid on March 1, 1921, that the balance of $5,400 be secured by a mortgage on the premises, payable seven years from March 1, 1921, at 6 per cent., and that a warranty deed and abstract to be furnished on or before January 1, 1921, were to be placed in escrow with the First National Bank of O'Neill, where the provisions of the contract were to be fulfilled. By subsequent agreement the papers were placed in escrow in the First National Bank of Atkinson.

The evidence for defendants is, in substance, that King had previously told Becker that this land was for sale and if he could find a buyer to let him know. He, Becker, told plaintiffs that he could not sell without the consent of the owner to the price named, but that at that time he could not remember her name; that the name of Mrs. King was not mentioned; that the agreement made was that the money was to be returned to plaintiffs provided he could not get the land for them, and that this was the instruction given the bank when the check and other papers were deposited. He did not have the money to handle the property, so he procured Dr. Waynick to finance the transaction, he buying the land for $320 less than plaintiffs had agreed to pay. Becker did not inform the Kings that he had made a contract to sell the land for $62 an acre. They paid him $200 commission for selling the land to Waynick. He paid Mrs. Norton $50 for putting him in touch with the plaintiffs. Dr. Waynick testifies that when he and Becker drove to O'Neill they went to the courthouse to ascertain the name of the owner of the land. He bought the land at $60 an acre. The contract be-

tween Mrs. King and Dr. Waynick, with a deed from Mrs. King with a blank for the name of the grantee to be written in, was placed with the contract between plaintiffs and Becker in the First National Bank of Atkinson. Waynick testifies that he was getting the land for Becker so that he would be able to deliver it on his contract with plaintiffs, and that he was ready and willing to carry out the contract and to make a separate deed to plaintiffs if they desired. Mr Swingley, who was at that time the cashier of the bank at Atkinson, testifies that the money and note deposited in the bank were to be delivered to Becker when there was satisfactory evidence in his hands of a contract on the land conveying title to Lightfoot and Carey. If Becker could not perform the contract, it was to be null and void, and the note and check returned. Swingley was to let plaintiffs know if such a contract was executed. The next thing that occurred was; a contract and deed from Mrs. King to Dr. Waynick were sent by the First National Bank of O'Neill to him to be held with the Becker contract, and he has had them in his possession ever since. He had received no instructions as to filling in the name of the grantee in the blank deed. He sent plaintiffs a telegram as follows: "Mrs. Clyde King contract signed and deposited with this bank. First Nat'l Bank." This was sent in reply to a telegram received. He turned the proceeds of the check and of the $500 note over to Dr. Waynick. He received no compensation for this.

Under the pleadings, the amendments requested by defendant not having been permitted, the other evidence does not bear upon the vital question and will not be set forth.

There is a substantial conflict in the evidence as to the agreement of plaintiffs with Becker and the bank under which the check, promissory note and contract with Becker, agent, were deposited in the bank. The plaintiffs testified the money was not to be turned over to Becker until Mrs. King had signed the contract. Becker and Swingley testified that her name was not mentioned, but that the check and note were to be delivered as soon as a contract for the sale

of the land, signed by the owner, was deposited in the bank. No contract was ever entered into between Mrs. King, the owner of the land at that time, or with Dr. Waynick, and plaintiffs. It is very evident that the plaintiffs would not have consented to the delivery of the check and note as a payment upon a contract which did not bind the owner of the land to convey to them if its terms were complied with by them. If the jury believed the evidence on behalf of plaintiffs as to the agreement with which the check and note were deposited, then the bank acted in violation of this agreement, and would be liable for the proceeds of the check and note at the time it unlawfully delivered the same to Becker or to Waynick. Defendants denied that this was the agreement. There was a conflict in the evidence on this very material point which should have been submitted to the jury. If the delivery of these proceeds was unauthorized by plaintiffs, the subsequent verbal offer to comply with the contract by Waynick, with whom the plaintiffs had no relations and were not in privity, could not alter the status or legal rights of the parties. Waynick is under no contract obligation with plaintiffs and they could not enforce any right as against him. Again, the law does not permit one party to a contract to substitute a third person in his stead without the consent of the other contracting party. Plaintiffs never had a contract with Mrs. King. They never agreed with her or with any one to make the payments required by the terms of the contract between Mrs. King and Dr. Waynick, or to execute a mortgage to her as required therein. Waynick has never been vested with absolute title so that he could fulfil the contract. Nor has Becker ever had the power or ability to carry it out.

We are of the opinion that the district court erred in directing a verdict in behalf of the defendants. The judgment is therefore reversed and the cause remanded for further proceedings.

REVERSED.

Note—See Novation, 29 Cyc. p. 1132.