IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

TRAVELERS INDEM. CO. V. GONZALEZ CONSTR.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

TRAVELERS INDEMNITY COMPANY, APPELLANT,

V.

GONZALEZ CONSTRUCTION, INC., APPELLEE.

Filed September 3, 2019.    No. A-18-249.

Appeal from the District Court for Sarpy County: WILLIAM B. ZASTERA, Judge. Affirmed.

CeCelia C. Ibson, of Ibson Law Firm, for appellant.

Robert J. Kirby and Steven G. Ranum, of Croker, Huck, Kasher, DeWitt, Anderson & Gonderinger, L.L.C., for appellee.

MOORE, Chief Judge, and RIEDMANN and BISHOP, Judges.

MOORE, Chief Judge.

INTRODUCTION

Travelers Indemnity Company (Travelers) appeals from the order of the district court for Sarpy County, granting partial summary judgment in favor of Gonzalez Construction, Inc. (Gonzalez Construction), and denying Travelers' motion for summary judgment. For the reasons set forth herein, we affirm.

BACKGROUND

Travelers is an insurance company authorized to do business in Nebraska with its principal place of business in Hartford, Connecticut. Pursuant to a contract with the State of Nebraska, Travelers is the contract insurer for the Nebraska Workers' Compensation Plan (the plan). The plan, established under Neb. Rev. Stat. § 44-3,158 (Reissue 2010), gives the Director of the Nebraska Department of Insurance authority to enter into an agreement with one or more workers'

- 1 -

compensation insurers to provide workers' compensation insurance to assigned risk employers. "Assigned risk employer means a Nebraska employer that is in good faith entitled to, but is unable to obtain, workers compensation insurance through ordinary methods." § 44-3,158(1). Travelers' relationship with the State as the contract insurer for the plan is memorialized in the plan agreement.

The plan agreement includes rules for eligibility, the application process, and resolution of disputes as to premiums and other matters. According to the plan agreement, a producer (i.e., properly licensed insurance professional) is responsible for forwarding a completed application form (ACORD application) to the contract insurer with an employer's or producer's check payable to the contract insurer "for the estimated annual or deposit premium." Coverage is bound only after receipt of a complete signed application and the appropriate deposit or initial premium.

Gonzalez Construction is a Nebraska corporation with its principal place of business in Omaha, Nebraska. Julio C. Gonzalez (Julio) is the president and owner of Gonzalez Construction. Julio applied for workers' compensation insurance with Travelers through the plan, provided certain information on the ACORD application, and paid $750 as a deposit premium. The "APPLICANT NAME" shown on the application form is "JULIO C. GONZALEZ." On the portion of the form containing check boxes to mark whether the applicant is an "INDIVIDUAL," "PARTNERSHIP," "CORPORATION," "SUBCHAPTER 'S' CORP," or "LLC," an "X" is marked next to the designation of "INDIVIDUAL." On the application, Julio did not affirmatively indicate that he had any employees or subcontractors and marked "NO" in response to various questions about employees and subcontractors. There is a section of the application for "INDIVIDUALS INCLUDED/EXCLUDED," which provides spaces for the applicant to fill-in information about "PARTNERS, OFFICERS, RELATIVES TO BE INCLUDED OR EXCLUDED." The only individual listed in this section is Julio who is identified as the owner of 100 percent of the operation with duties of "DRYWALL CONSTRUCTION" and remuneration of "30,000." Under the space in this section to identify whether the individuals listed are "INC/EXC," Julio is marked "E."

Travelers issued a policy of workers' compensation insurance (the policy) to Julio for the policy period of October 22, 2009 to October 22, 2010. The named insured was Julio, and the policy indicates that "Insured is AN INDIVIDUAL." Part five of the policy contains provisions with respect to premium and in paragraph A states, "All premium for this policy will be determined by our manuals of rules, rates, rating plans and classifications." Part five, paragraph E, under the title "Final Premium," provides that "[t]he premium shown on the Information Page, schedules, and endorsements is an estimate." This provision further explains that "[t]he final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy." The policy also contains provisions giving Travelers the authority to perform audits to determine the correct premium to be charged. Part five, paragraph G, under the title "Audit," states that "[y]ou [Julio] will let us examine and audit all your records that relate to this policy" and "[w]e [Travelers] may conduct the audits during regular business hours during the policy period and within three years after the policy period ends." This paragraph further explains that the "[i]nformation developed by audit will be used to determine final premium."

Travelers sent a "Supplementary Underwriting Information Request," dated November 13, 2009, to Regency Insurance, the producer for the policy, asking certain information about the insured, i.e., Julio. Specifically, Travelers asked for "a completed detailed description of the insured[']s operations" and verification of the correct "entity name and entity type" for the insured (i.e. whether the insured entity was "Gonzalez, Julio C dba Gonzalez Construction," a "Sole Proprietor/Individual," or whether the insured entity was "Gonzalez Construction Inc[.]," a corporation. Travelers also requested the provision of tax returns and specifically asked what relationship the insured had with "Gonzalez Construction Inc."

On December 1, 2009, Travelers received correspondence in response to the request for supplementary information. This unsigned correspondence indicated that Julio had incorporated his business in 2007 and that he was the sole shareholder and only employee of Gonzalez Construction, an S corporation, which was in the business of drywall installation. Attached to the communication was a corporate tax return for Gonzalez Construction, showing that the company had $371,793 in subcontract labor during the 2008 tax year.

After receipt of this information, Travelers unilaterally changed the name of the insured on the policy. The copy of the policy in the record includes certain documents issued on December 11, 2009. There is a "CHANGE DOCUMENT" page, reflecting the insured's name of "GONZALEZ CONSTRUCTION, INC." The change document page states, "This change is issued by the Company or Companies that issued the policy and forms a part of the policy. It is agreed that the policy is amended as follows." The page states, "The absence of an entry in the premium spaces below means that the premium adjustment, if any, will be made at time of audit." No dollar amounts are reflected on that portion of the page. The page also states, "THIS POLICY CHANGE WAS PROCESSED PER A REQUEST RECEIVED FROM YOU OR YOUR PRODUCER." There are also two "POLICY INFORMATION PAGE ENDORSEMENT" documents, one of which states that "[t]he Insured's Name is changed to read: GONZALEZ CONSTRUCTION, INC." and another which states that "[t]he Insured's Legal Status is changed to read: A CORPORATION."

On April 22, 2010, Travelers wrote a letter to Gonzalez Construction, stating:

Our records indicate that you operate a contracting business. To gain a better understanding of your business the enclosed questionnaire needs to be completed and returned to my attention.

Please note that the payroll for uninsured subcontractors will be included in your premium basis unless you provide evidence that the subcontractor is not subject to state workers compensation statutes and that all appropriate forms have been completed and filed with the state and with our office.

A questionnaire included with the letter stated, "Please note that payroll for uninsured Sub contractors will be included in your premium basis if you can not [sic] provide evidence of a valid workers' compensation insurance certificate."

On June 14, 2010, Travelers wrote to the producer for the policy, via fax, stating:

Per our conversation today, we spoke about the $371,793 in subcontract labor listed on the insured's 2008 1120 tax form. I informed you that if the insured's contract labor

does not have their own workers compensation policies or are independent contractors, we should be picking up the payroll on his workers compensation policy.

The insured will need to collect certificates of insurance from the contract labor that show they have their own workers compensation insurance coverage or be deemed independent.

Gonzalez Construction's accountant completed a "POLICYHOLDER AUDIT REPORT," which was returned to Travelers in November 2010. The report indicates that Gonzalez Construction is in the business of drywall installation and has no employees other than Julio. In the section of the report for "NON-EMPLOYEE LABOR," there is a checkmark in the box next to "Yes" in response to the inquiry, "Did you use anyone other than an employee to perform work, or a portion of a job, on your behalf?" A subcontractor worksheet included in the report lists eight individuals along with one business. Insurance policy information is given for each subcontractor on the worksheet, but the coverages listed are identified as "General Liability" and not "Work Comp."

On December 29, 2010, Travelers issued a premium adjustment notice to Gonzalez Construction in the amount of $56,620. On January 3, 2011, Travelers issued a bill to Gonzalez Construction for $55,870 (the amount of the adjusted premium less the $750 deposit).

On January 25, 2011, the attorney for Gonzalez Construction responded:

As you are aware the Policy has been terminated, Mr. Gonzalez has already paid the premium of $750.00 for the Policy, and no claims have been made on the Policy.

Gonzalez Construction has no employees other than Julio Gonzalez, the sole shareholder of the company. As Gonzalez Construction indicated, the individuals whose names were provided to you are independent contractors. . . . The relationship of the parties [Gonzalez Construction and the subcontractors] is clearly established by the agreement between [them] and each subcontractor is responsible for his own liability and workman's compensation insurance. Travelers' attempt to classify these independent contractors as employees is unwarranted.

Additionally, your agent represented that the premium of $750.00 covered the insurance needs of Gonzalez Construction. . . .

On February 4, 2011, Travelers responded to the attorney's communication, stating:
Our analyst contacted the accountant [for Gonzalez Construction] (who provided the audit information) . . . to request additional information to prove the independence of the contract labor. We did not receive with the audit file any certificates of insurance, invoices, or any other documentation to help determine if the contract labor is truly independent of our insured. The labor done by the workers is exactly the same as our insured's operations. If the contract laborers can provide certificates of insurance or other documentation to prove their independence, we will be able to review the audit through our dispute. Please forward additional information you may have. At this time, we are unable to put this into dispute because we don't have any back up information.

The attorney for Gonzalez Construction sent three more letters disputing the debt dated March 3 and 11 and April 13, 2011.

In August 2014, Travelers filed a complaint against Gonzalez Construction for breach of contract, seeking damages in the amount of $56,620 plus costs. Gonzalez Construction answered, generally denying the material allegations of Travelers' complaint, including Travelers' assertion that there was a contract between the parties, and setting forth various affirmative defenses. Gonzalez Construction also set forth counterclaims, alleging breach of implied duty of good faith and fair dealing, fraudulent misrepresentation, violation of the Nebraska Consumer Protection Act, and bad faith.

In February 2017, Gonzalez Construction filed a motion for partial summary judgment with respect to Travelers' complaint. Subsequently, Travelers filed a motion for summary judgment with respect to both its complaint and Gonzalez Construction's counterclaims.

On March 6, 2017, the district court heard the parties' motions for summary judgment. The court heard argument and received exhibits, including copies of the insurance application and policy at issue, correspondence between the parties, the deposition of Myran Collier, an employee of Travelers, and an affidavit from Julio. We have set forth relevant details of the insurance application and policy and the parties' correspondence above. Additional information found in the deposition and affidavit are detailed below.

Collier, an account manager underwriter for Travelers, testified by deposition. Collier reviewed Julio's workers' compensation insurance application for the underwriting of the policy at issue. According to Collier, $750 was the minimum premium charge for a policy in Nebraska at the time, and the producer who submitted the application would have put the minimum premium on the application because it was sent "with zero payroll." When Collier received the application, she performed internet searches to verify the information on it. After performing these searches, Collier found that "the application was submitted with the incorrect legal status and incorrect applicant name." This prompted Collier to send a request to the producer to verify the correct entity type. Collier testified that "the application was submitted stating the insured was a sole proprietorship," but the information she received from the producer indicated that the insured is actually "a corporation under the name of Gonzalez Construction, Inc." Collier indicated that this was the response that prompted a change of the insured to Gonzalez Construction. Collier made the endorsement to the policy to correct the name. No signature is required for the endorsement.

Collier admitted there was no consent received from Julio to change the name of the insured from Julio to Gonzalez Construction, but she testified that the direction from the producer to change the name of the insured was sufficient under Travelers' policies.

Collier reviewed a copy of the policy during her deposition and testified that "Julio Gonzalez" was "the insured under the policy." Collier was asked why the policy does not "include a signature for the insured." She testified that "the signature for the insured is on the application," and she confirmed upon further questioning that the insured never actually signs the policy. When asked how the insured knows "what they're agreeing to," Collier replied, "That's a conversation that they should have with their producer." She also confirmed that the insured agrees to the policy by filling out a workers' compensation application, and she agreed that the application in this case "would have been the consent of the insured to the policy."

Collier testified about the various communications outlined above and about her efforts to determine whether Gonzalez Construction's subcontract labor (which had been shown in the 2008 tax forms) should be insured as employees under the policy. According to Collier, the subcontract laborers would not be deemed employees if they had their own workers' compensation insurance or they were deemed independent contractors. Collier testified that Travelers' position is that subcontractors are employees until proven otherwise. Travelers was not provided any workers' compensation policies for the subcontractors of Gonzalez Construction and they were therefore considered employees under the policy and the premium was increased. Collier agreed that if the subcontractors were independent contractors there would be no reason for the premium increase.

In his affidavit, Julio confirmed that Gonzalez Construction has no employees, that he is the sole officer of the company, and that he is the only one who can bind the company to any contract. Julio stated that he "personally" purchased workers' compensation insurance from Travelers for the period of October 22, 2009 to October 22, 2010, that Gonzalez Construction was not a party to any contract with Travelers, and that he never consented on behalf of the company to be a party to the workers' compensation policy at issue. He stated further that the policy he purchased was meant to cover "only [him] personally upon the advice of the agent who sold [him] the policy" and was purchased solely because it was needed for one general contractor that he was trying to work with. He indicated that neither he nor the company had ever needed workers' compensation insurance before or since applying for the policy. He confirmed that no claims had ever been filed under the policy.

According to Julio, the change in the name of the insured under the policy was done unilaterally by Travelers without his knowledge or consent and without the company's agreement to be bound under the policy. Julio stated that Travelers misclassified Gonzalez Construction's independent contractors as employees, and he set forth information about the subcontractors and their relationship with Gonzalez Construction. Specifically, he stated that the subcontractors are, in fact, independent contractors, who sign independent contractor agreements with Gonzalez Construction, are not required to work exclusively for the company, and are responsible for maintaining their own workers' compensation insurance.

On April 11, 2017, the district court entered an order, granting Gonzalez Construction's motion for partial summary judgment and dismissing Travelers' complaint. Specifically, the court found "Julio C. Gonzalez, in his personal capacity," applied for and obtained insurance from Travelers and that Gonzalez Construction was "neither the entity that completed an application for insurance, nor signed any document agreeing to be bound by the terms of the policy." The court also found that Travelers "unilaterally decided to amend the policy to change the name of the insured" and that Travelers acknowledged that no consent had been obtained from Julio to make a change to the name of the insured. The court concluded that Travelers could not establish that a contract had ever existed between the parties that would give rise to the cause of action asserted in the complaint. Finding no genuine issues of material fact with regard to this issue, the court granted Gonzalez Construction's motion for partial summary judgment. Because the court had already found that Travelers' complaint must be dismissed and because it found that genuine issues of fact remained as to Gonzalez Construction's counterclaims, it denied Travelers' motion for summary judgment in its entirety.

On February 27, 2018, the district court granted Gonzalez Construction's motion to dismiss its counterclaims without prejudice. Travelers then perfected its appeal to this court.

## ASSIGNMENTS OF ERROR

Travelers asserts, consolidated and restated, that the district court erred in (1) finding that no contract existed between the parties and (2) failing to grant Travelers' motion for summary judgment.

## STANDARD OF REVIEW

An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Meyer Natural Foods v. Greater Omaha Packing Co.*, 302 Neb. 509, 925 N.W.2d 39 (2019). In reviewing a summary judgment, the court views the evidence in the light most favorable to the party against whom the judgment was granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

The meaning of a contract is a question of law, in connection with which an appellate court has an obligation to reach its conclusions independently of the determinations made by the court below. *Id.*

## ANALYSIS

*Finding of No Contract.*

Travelers asserts the district court erred in finding that no contract existed between the parties.

An insurance policy is a contract between the insurance company and the insured, and an appellate court construes it like any other contract, according to the meaning of the terms that the parties have used. See *Van Kleek v. Farmers Ins. Exch.*, 289 Neb. 730, 857 N.W.2d 297 (2014); *Mortgage Express v. Tudor Ins. Co.*, 278 Neb. 449, 771 N.W.2d 137 (2009). To create a contract, there must be both an offer and an acceptance; there must also be a meeting of the minds or a binding mutual understanding between the parties to the contract. *Gibbons Ranches v. Bailey*, 289 Neb. 949, 857 N.W.2d 808 (2015).

A policy of insurance cannot be altered or modified without consent of the insured. *Ruby Coop. Co. v. Farmers Elevator Mut. Ins. Co.*, 197 Neb. 605, 250 N.W.2d 239 (1977). One party to a contract may not substitute a third person in his stead without the consent of the other contracting party. *Carey v. Becker*, 112 Neb. 115, 198 N.W. 877 (1924). Mutual assent by the parties is required to modify a contract that substantially changes the liabilities of the parties. *Solar Motors v. First Nat. Bank of Chadron*, 249 Neb. 758, 545 N.W.2d 714 (1996).

Mutual assent to a contract is determined by the objective manifestations of intent by the parties, not by their subjective statements of intent. *Tilt-Up Concrete v. Star City/Federal*, 255 Neb. 138, 582 N.W.2d 604 (1998). Acceptance of an offer may be illustrated by words, conduct, or acquiescence indicating agreement and may be indicated by the silence and inaction of an

offeree. *Id.* However, silence, absent a duty to speak, does not form contracts. See *Solar Motors, supra* (silence of contracting party to proposed modification leaves contract unmodified).

The undisputed evidence in this case shows that Julio applied for and obtained a workers' compensation insurance policy from Travelers, and he was listed as the insured on the policy. Travelers later unilaterally changed the insured to Gonzalez Construction without the consent of Julio to be eliminated as the insured under the policy or the consent of Gonzalez Construction to be bound under the policy.

Travelers argues that Gonzalez Construction acquiesced to the change making it the named insured under the policy. Specifically, Travelers argues that between January 2011, when Travelers billed Gonzalez Construction for the amount of the adjusted premium, and February 2017, when Gonzalez Construction filed its motion for partial summary judgment, the only issue presented by Gonzalez Construction as being disputed was Travelers' inclusion of payroll associated with workers Gonzalez Construction deemed independent contractors that Travelers used to calculate premium. Travelers argues, "At no time, up until it filed its Motion for Summary Judgment, did Gonzalez [Construction] so much as comment on, let alone object to, Travelers having (properly) changed the named insured on the subject policy from Julio Gonzalez, sole proprietor, to Gonzalez Construction, Inc., corporation." Brief for appellant at 27. Elsewhere in its brief, Travelers argues that "the very first time" Gonzalez Construction claimed it was not the insured under the policy was in March 2017 when it served its brief in support of its motion for partial summary judgment. Brief for appellant at 21. We disagree that this is evidence of mutual assent by either Julio or Gonzalez Construction to the unilateral change of the insured name by Travelers. And, while the record on appeal does not include a copy of the summary judgment brief referenced by Travelers, Gonzalez Construction clearly denied in its answer that it entered into a contract with Travelers, and Travelers has failed to prove otherwise.

The dissent relies upon "Gonzalez Construction's admission in its answer that it applied for the workers' compensation insurance at issue and paid the premium" to conclude that such "judicial admission" "is conclusive as to the fact that Gonzalez Construction is the appropriate entity who contracted with Travelers, and no evidence may be shown to contradict it." While we agree that judicial admissions may bind a party to the facts admitted, that rule of law is applicable when the opposing party invokes the rule.

> """A party may at any time invoke the language of the pleading of his adversary on which the case is tried on a particular issue as rendering certain facts indisputable; and in so doing he is neither required nor permitted to offer the pleading in evidence. . . . An admission made in a pleading on which the trial is had is more than an ordinary admission. It is a judicial admission and constitutes a waiver of all controversy so far as the adverse party desires to take advantage of it, and is therefore a limitation of the issues."''"

*Lange Building & Farm Supply, Inc. v. Open Circle "R", Inc.*, 210 Neb. 201, 205, 313 N.W.2d 645, 648 (1981).

We find no indication in the record that Travelers invoked this rule of law in the district court. No objection was made to Julio's affidavit raising the issue that Gonzalez Construction was not a party to the contract when it was offered at the summary judgment hearing. Nor does

Travelers rely upon a "judicial admission" in its brief on appeal. The district court decided the matter based upon the arguments and evidence presented at the summary judgment hearing. And on appeal, an appellate court disposes of cases on the theory upon which it was tried. *Palmtag v. Gartner Constr. Co.*, 245 Neb. 405, 513 N.W.2d 495 (1994) (declining to analyze whether jury should have been allowed to determine issue that was not raised by parties). Because Travelers did not rely upon a "judicial admission" as a basis for denying Gonzalez Construction's motion for partial summary judgment, we reject the dissent's argument that we should do so now.

Travelers also argues that Gonzalez Construction and its subcontractors received the benefit of the policy during the year that it was in effect and therefore cannot question the validity of the policy. It cites *Frasier v. Trans-Western Land Corp.*, 210 Neb. 681, 316 N.W.2d 612 (1982), for the propositions that a party who has had the benefit of an agreement cannot be permitted in an action founded upon it to question its validity and that it would be in the highest degree inequitable and unjust to permit a defendant to repudiate a contract the benefit of which he retains. *Frasier* was a case involving a dispute between stock holders as to whether stock issued without consideration was void. Travelers does not explain exactly what benefits, other than the mere existence of the policy, were retained by Gonzalez Construction in this case, given that no claims were ever filed by either Julio or the company against the policy, which has now expired.

Viewing the evidence in the light most favorable to Travelers, the evidence does not support a conclusion that there was a contract between Gonzalez Construction and Travelers. Julio was the original contracting party and named insured under the contract. The district court did not err in granting Gonzalez Construction's motion for partial summary judgment or in denying Travelers' motion for summary judgment on the issue of whether there was a contract between the parties.

*Denial of Travelers' Motion for Summary Judgment.*

Travelers asserts that the district court erred in failing to grant its motion for summary judgment. Although the denial of a motion for summary judgment, standing alone, is not a final, appealable order, when adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, the reviewing court obtains jurisdiction over both motions and may determine the controversy which is the subject of those motions or make an order specifying the facts which appear without substantial controversy and direct such further proceedings as it deems just. *SFI Ltd. Partnership 8 v. Carroll*, 288 Neb. 698, 851 N.W.2d 82 (2014).

Here, in granting Gonzalez Construction's motion for partial summary judgment and denying Travelers' motion with respect to Travelers' complaint, the court ruled only on the issue of whether there was a contract between the parties. We have addressed the court's grant of Gonzalez Construction's motion and the denial of Travelers' motion as it related to the existence of a contract between the parties above. However, because the court determined that there was no contract between the parties, any other issues presented by Travelers' motion for summary judgment, i.e., issues with respect to Gonzalez Construction's obligations under any contract (such as an obligation to exhaust administrative remedies before seeking relief in court) and its liability based on the classification of its subcontractors as employees, have not been passed upon by the lower court. An appellate court will not consider an issue on appeal that was not presented to or

passed upon by the trial court. *Bower v. Eaton Corp.*, 301 Neb. 311, 918 N.W.2d 249 (2018). We also note that, to the extent Travelers' motion for summary judgment was also addressed to the issues raised by Gonzalez Construction's counterclaims, the court granted the company's motion to dismiss the counterclaims without prejudice. Where a case is voluntarily dismissed, there is no final order on the law or facts of the case, nor has there been a decision on the merits; accordingly, no appeal will lie. *Smith v. Lincoln Meadows Homeowners Assn.*, 267 Neb. 849, 678 N.W.2d 726 (2004). We decline to address Travelers' arguments with respect to the denial of its motion for summary judgment further, including its argument that the court should have granted its motion for summary judgment due to Gonzalez Construction's failure to exhaust its administrative remedies under the contract before pursuing any defenses and/or counterclaims to Travelers' lawsuit.

During oral argument, Travelers made reference to Neb. Rev. Stat. § 48-115(9) and (10) (Reissue 2010). This section defines the terms "employee" and "worker" under the Nebraska Workers' Compensation Act. Subsections (9) and (10) address requirements concerning those who own more than 25 percent of a corporation and sole proprietors, respectively, providing that such individuals are not construed as employees under the Nebraska Workers' Compensation Act unless they file an election of coverage with the workers' compensation insurer as provided in those subsections. Travelers did not cite to § 48-115(9) or (10) in its pleadings or in its briefs on appeal, but it did refer to these requirements obliquely at several points in its initial brief by noting the fact that Julio is marked on the ACORD application as being excluded from the policy. Travelers appears to be arguing that when the application is reviewed in light of §48-115, it means that Travelers could not have formed a contract with Julio. It is not clear from our record whether this statutory argument was presented to the district court, and the district court did not discuss it in its order. Regardless, we conclude that this argument is without merit.

Travelers' argument, as well as the dissent's analysis of this issue, ignores the fact that a policy was issued naming Julio as the insured and stating that the "Insured is AN INDIVIDUAL." The question of whether Travelers could have formed a contract with Julio is not the issue in this appeal. The question is whether Travelers could unilaterally change the name of the insured to Gonzalez Construction, thereby creating a contract between itself and Gonzalez Construction and allowing it to then sue Gonzalez Construction for breach of that contract. The district court concluded that it could not, and we have affirmed that finding above.

CONCLUSION

The district court did not err in granting Gonzalez Construction's motion for partial summary judgment or in denying Travelers' motion for summary judgment with respect to the issue of whether there was a contract between the parties. All other issues raised by Travelers' motion for summary judgment are not properly before this court on appeal.

AFFIRMED.

BISHOP, Judge, dissenting.

Since Gonzalez Construction admitted in its answer to Travelers' complaint that it "applied for workers compensation insurance with Travelers and that it paid $750 for said insurance," I

- 10 -

respectfully disagree with the majority's conclusion that there was no contract between the parties, and I would reverse and remand for further proceedings. Further, as a separate basis for reversal, I agree with Travelers that the insurance policy sought by Julio was not available to him as an "individual" in a personal context; rather, the insurance was only available to an "individual" as a sole proprietor of a business, which Julio inaccurately represented on his ACORD application. The application and the insurance policy establish that the insurance coverage is for an "assigned risk" business entity to cover its employees, and is not for "individual" coverage outside that context.

Regarding Gonzalez Construction's admission, Traveler's alleged in its complaint at paragraph 5, that Gonzalez Construction, who it thereafter refers to as "Gonzalez," "applied for workers compensation insurance with Travelers through the Plan and provided certain information on the ACORD application and paid $750.00 as initial, or deposit, premium." In its answer, Gonzalez Construction "admits only so much of Paragraph 5 of the Complaint alleging that Defendant [Gonzalez Construction] applied for workers compensation insurance with Travelers and that it paid $750.00 for said insurance; Defendant denies all remaining allegations in Paragraph 5 of said Complaint." Despite that admission, Gonzalez Construction later, at paragraph 32, generally denied paragraph 32 of Travelers' complaint which alleged that "Travelers and Gonzalez were parties to a contract of insurance, Policy No. [***L147], for the period 10/22/09 to 10/22/10." Gonzalez Construction further set forth affirmative defenses which indicated that "[Gonzalez Construction] has already paid the $750.00 premium that [Travelers] charged for the policy," and "[Travelers] has fraudulently or negligently misrepresented the terms of the alleged contract between the parties." Gonzalez Construction further alleged counterclaims against Travelers based upon actions related to the contract for which Gonzalez Construction requested attorney fees and damages. There is nothing in the record to indicate Gonzalez Construction ever sought dismissal of the action on the basis that it was not a party to the contract. This contention does not arise until the submission of Julio's affidavit at the time of the summary judgment motions. In my opinion, since Gonzalez Construction admitted in its answer (and affirmatively pled) that it had applied for workers' compensation with Traveler's and paid the $750 premium, such an admission is binding on Gonzalez Construction, at least for purposes of defeating a motion for summary judgment upon which the district court decided that Gonzalez Construction was not a party to the insurance contract. Gonzalez Construction's later general denial to paragraph 32 does not impact its specific admission regarding being the party to apply and pay for the insurance policy, as discussed next.

Generally, an admission made in a pleading on which the trial is had is more than an ordinary admission; it is a judicial admission. *Wisner v. Vandelay Investments*, 300 Neb. 825, 916 N.W.2d 698 (2018). It is an elementary rule of pleading that matters admitted by the pleadings need not be proved. *Id.* A judicial admission is a formal act done in the course of judicial proceedings which is a substitute for evidence, thereby waiving or dispensing with the production of evidence by conceding for the purpose of litigation that the proposition of fact alleged by the opponent is true. *Lewison v. Renner*, 298 Neb. 654, 905 N.W.2d 540 (2018) (defendant's answer admitted negligence in operating vehicle and admitted negligence was proximate cause of collision; trial court correctly found same as matter of law based upon defendant's unconditional admissions).

- 11 -

An admission in a plea or answer is binding on the party making it; such an admission is a conclusive or judicial admission, and is not merely evidence. *Lange Building & Farm Supply, Inc. v. Open Circle "R", Inc.*, 210 Neb. 201, 313 N.W.2d 645 (1981). The admission is conclusive as to the admitted fact, and no evidence may be shown to contradict it. *Id*. In *Lange Bldg. & Farm Supply, Inc., supra*, the plaintiff sued the defendant corporation for breach of contract related to the repair of a grain bin. The defendant moved for a directed verdict at the close of plaintiff's evidence on the basis that there was no evidence to establish a contractual relationship between the plaintiff and the defendant corporation; defendant claimed if there was any contract at all, it was between the plaintiff and the president of the corporation in his individual capacity. See *id*. The trial court sustained the motion, but the Nebraska Supreme Court reversed, noting that the defendant corporation filed an "amended answer and cross-petition" in which it generally denied plaintiff's allegations, but then specifically pleaded that "'the Plaintiff and Defendant entered into an agreement for the repair" of defendant's grain storage bin, and the defendant also incorporated and attached the same contract as was incorporated and attached to the plaintiff's pleading. *Id*. at 203, 313 N.W.2d at 647. The Supreme Court stated that "[t]his recitation becomes important because there is no other evidence in the record bearing upon the involvement of the defendant corporation in this transaction," except for a brief series of questions and answers in the record. *Id*. "All other testimony concerning the identity of the contracting party who hired the work done specified . . . the president of the defendant corporation, in his individual capacity only." *Id*. at 204, 313 N.W.2d at 647. The Supreme Court concluded that evidence introduced in the plaintiff's case and as set forth in the pleadings raised a legitimate fact question as to the liability of the defendant corporation which should have been submitted to the jury for resolution. In addition to testimony that the work was done for the defendant corporation, the Supreme Court pointed out that the defendant judicially admitted in its amended answer that the same contract sued upon by the plaintiff existed between the plaintiff and the defendant corporation. The court then set forth the proposition noted above that an admission in an answer is binding on the party making it, and is conclusive as to the admitted fact. See *Lange Bldg. & Farm Supply, Inc., supra*.

Accordingly, Gonzalez Construction's admission in its answer that it applied for the workers' compensation insurance at issue and paid the premium is conclusive as to the fact that Gonzalez Construction is the appropriate entity who contracted with Travelers, and no evidence may be shown to contradict it. See *Lange Building & Farm Supply, Inc., supra.* I appreciate the majority's concern that the admission does not appear to have been specifically invoked by Travelers, however, as mentioned, the claim that Gonzalez Construction was not a party to the contract was not raised until the submission of the summary judgment materials. As noted in Travelers' appellate brief, "between January 2011 and February 2017, the only issue presented by Gonzalez as 'disputed' was Travelers inclusion of payroll associated with workers . . . . At no time, up until it filed its Motion for Summary Judgment, did Gonzalez so much as comment on, let alone object to, Travelers having (properly) changed the named insured on the subject policy from Julio Gonzalez, sole proprietor, to Gonzalez Construction, Inc., corporation." Brief for appellant at 26-27. And while the majority correctly notes that Travelers, in its brief on appeal, does not make a specific argument based on Gonzalez Construction's judicial admission, this court may nonetheless note plain error. Plain error may be found on appeal when an error unasserted or

uncomplained of at trial is plainly evident from the record, affects a litigant's substantial right, and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *State v. Briggs*, 303 Neb. 352, 929 N.W.2d 65 (2019). See, also, *Upper Republican NRD v. Dundy Cty. Bd. of Equal.*, 300 Neb. 256, 912 N.W.2d 796 (2018) (appellate court ordinarily considers only those errors assigned and discussed in briefs, but may notice plain error). Since summary judgment can only be entered when "the pleadings and the evidence admitted at the hearing show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law," Neb. Rev. Stat. § 25-1332 (Cum. Supp. 2018), I conclude it was plain error to enter summary judgment in favor of Gonzalez Construction when the pleadings of the case presented a genuine dispute as to whether Gonzalez Construction was in fact the proper party to the insurance contract.

Significantly, even if the judicial admission was not properly invoked as the majority contends, and setting aside our ability to note plain error, there is other evidence, namely, the application and policy, which also point to Gonzalez Construction being the proper party in the underlying action. As noted by the majority, Travelers' workers' compensation insurance plan is available through § 44-3,158, which gives the Director of the Nebraska Department of Insurance the authority to enter into an agreement with one or more workers' compensation insurers to provide workers' compensation insurance to assigned risk employers. An assigned risk employer means a Nebraska *employer* who is in good faith entitled to, but is unable to obtain, workers' compensation insurance through ordinary methods. The plan is not designed to offer insurance to individual employees or private individuals; rather, it is made available to employers only.

Therefore, in this case, the "applicant name" showing "Julio C. Gonzalez," and the box next to "Individual" being marked when given the other options of "partnership," "corporation," "Subchapter 'S' Corp," or "LLC," can only be read to mean an "individual" business owner or sole proprietor since the insurance is only available for employers to request, not individual employees or private individuals. Additionally, a "Federal Employer ID Number" is requested, not a personal social security number (although it appears Julio incorrectly inserted his personal social security number; this was also later corrected). The application indicates Julio is a 100-percent "owner," again representing his position as an employer. Since the record shows that Julio incorporated his business as of July 1, 2007, then by the time he completed the ACORD application in October 2009, he obviously erred in classifying his business entity as "Individual" since he was no longer a sole proprietor who could check that option. Julio also misstated in his application that he did not use subcontractors in his business, when clearly he had subcontract labor in the preceding year, as well as $327,048 in subcontract labor during the policy period. The fact that Julio misstated the classification of his business entity does not change the fact that he applied for the insurance as an employer, and the only business entity of which he could be considered an employer at that time was Gonzalez Construction. In fact, where Julio signed the ACORD application, it indicates, "SIGNATURE (MUST BE AN OWNER OR AN OFFICER)." When signing that application, Julio had to be signing as an owner or officer of a business entity, not personally as an individual. Therefore, by signing the application, Julio was binding the only "employer" in existence at that time of which he was an owner or an officer, namely, Gonzalez Construction.

In addition to the judicial admission and the purpose and content of the ACORD application, the issued policy states at the outset that the policy "is a contract of insurance between you (the employer named in Item 1 of the Information Page) and us (the insurer named on the Information Page). . . . The terms of this policy may not be changed or waived except by endorsement issued by us to be part of this policy." It also states, "You are insured if you are an employer named in Item 1 of the Information Page." The Information Page identifies the insured as Julio C. Gonzalez and notes the "Total Estimated Premium" of $750. The listing of endorsements made part of the policy includes a "Notification of Change in Ownership Endorsement." That endorsement states that the "experience rating modification factor . . . may change if there is a change in your ownership. . . . Change in ownership includes sales, purchases, other transfers, mergers, consolidations, dissolutions, formations of a new entity and other changes provided for in the applicable experience rating plan manual." Notably, the endorsement states, "You must report any change in ownership to us in writing within 90 days of such change. Failure to report such changes within this period may result in revision of the experience rating modification factor used to determine your premium."

As testified to by Myran Collier, who was the underwriter on the policy at issue, applications do not always come in with "updated, correct information," and it was her job to verify that the information was correct. On November 13, 2009, a "Supplementary Underwriting Information Request" was made requesting verification of the "correct entity name and entity type" for the insured. It listed two choices: (1) "Entity Type: Sole Proprietor/Individual[,] Entity Name: Gonzalez, Julio C dba Gonzalez Construction" or (2) "Entity Type: Corporation[,] Entity Name: Gonzalez Construction Inc." It also inquired as to what relationship or affiliation "the insured" had with Gonzalez Construction, Inc. A response was requested by December 3. A typed document that appears to have been sent by facsimile dated December 1 to Travelers ("Thomas CPA" is noted in the facsimile information heading) indicates it is regarding "Supplemental Underwriting Information Request For Julio Gonzalez Policy #***L14709." It then states:

> 1. Company is in the construction industry, drywall installation.
> 2. (A) Julio Gonzalez as a sole proprietor dba Gonzalez Construction does not exist as of 7/1/2007.
> As of that date, Mr. Gonzalez incorporated his business
> (B) Entity Type: S Corporation /Entity Name: Gonzalez Construction Inc
> 3. A Schedule C was not prepared for 2008/See attached 2008 1120S for Corporation
> 4. Mr. Julio Gonzalez is the sole shareholder in the S Corporation Gonzalez Construction Inc. He is also the only employee of the corporation
> Please direct any questions to my accountant -- Carol Thomas EA [contact information provided]

Although the document is not signed, the direction to refer questions "to my accountant" would suggest the document was generated by Julio but faxed through Thomas' office (given the heading at the top of the page).

As the majority points out, after receipt of this information, Travelers changed the name of the insured on the policy. On December 11, 2009, a "Change Document" was issued and reflects the "Insured's Name" as Gonzalez Construction, Inc., and indicates that the policy change "was processed per a request received from you or your producer." A policy information endorsement was also generated, indicating the insured's name was changed to Gonzalez Construction, and the insured's legal status was changed to a corporation. The majority concludes this change was done unilaterally by Travelers, and that such a change required Julio's consent "to be eliminated as the insured under the policy or the consent of Gonzalez Construction to be bound under the policy." However, I do not see this as a unilateral change, nor a change that required anything more than verifying and correcting the classification of the business entity to be insured from a sole proprietorship to a corporation. When an initial review was undertaken regarding the issued policy, a question arose as to whether the insured employer was properly classified. Notably, in the policy under "Part Five -- Premium," it states under part "B. Classifications":

> Item 4 of the Information Page shows the rate and premium basis for certain business or work classifications. These classifications were assigned based on an estimate of the exposures you would have during the policy period. If your actual exposures are not properly described by those classifications, we will assign proper classifications, rates, and premium based by endorsement to this policy.

The policy provides that Travelers could provide proper classifications for the business by endorsements, which it did. And as noted earlier, a "Notification of Change in Ownership Endorsement" issued with the policy provided that if there was a change in ownership (formation of a new entity or other changes), the insured was required to report such changes in ownership to Travelers in writing within 90 days of such change. The document faxed on December 1, 2009, did not report a new change in ownership, but it did report the correction to the classification of Julio's business entity. And the reference at the bottom of the page to direct questions "to my accountant -- Carol Thomas," certainly suggests the document was generated by Julio. Notably, a "Policyholder Audit Report" was signed November 2, 2010, by Thomas as an "Authorized Representative." This time, where it asks about "Your Company Structure," and gives as options, "Individual," "Partnership," "Corporation," and "Limited Liability Co.," the option "Corporation" is circled. The directions specify to list "Sole Proprietor, Partner(s), or Corporate Officer(s) along with their duties," and directs to "[i]nclude all principals even if they receive no pay or have elected, by filing an exclusion form, not to be covered." Julio Gonzalez is listed as "President."

Julio had an obligation to correct the classification of his business entity which had been incorrectly identified in his ACORD application. The faxed document dated December 1, 2009, in response to an inquiry from Travelers about the proper classification of his business, correctly identifies his business entity as a corporation. Julio was unable to apply for the assigned risk employers' workers' compensation insurance for himself as an individual person; rather, the insurance was only available to him as an employer. And at the time of Julio's application, the only business employer in existence for which he had authority to bind was Gonzalez Construction. Accordingly, I would reverse the summary judgment order and remand for further proceedings.